TURNER v. CROSS et al.

(Supreme Court of Texas. Feb. 5, 1892.)

NEGLIGENT KILLING—ACTION AGAINST RECEIVERS.

A receiver is not a "proprietor, owner, charterer, or hirer," within Rev. St. art. 2899, giving a right of action for injuries resulting in death caused by the negligence of the proprietor, owner, charterer, or hirer of a railroad, etc., or by the negligence of their servants or agents.

Appeal from district court, Williamson county.

Action by S. S. Turner against H. C. Cross and George A. Eddy, as receivers, for damages on account of injuries resulting in the death of her son. Judgment for defendants, and plaintiff appeals. Affirmed.

J. W. Parker, for appellant. Fisher & Townes, for appellees.

STAYTON, C. J. Appellant brought this action to recover damages for an injury received by her son, which she alleges was caused by the negligence of the receivers, and resulted in his death, and it is agreed that the only question to be decided is: As the law (article 2899, Rev. Civ. St.) stood on the 22d day of December, 1889, is the receiver of a railroad liable as such for injury negligently inflicted upon and resulting in the death of an employe, when the injury is sustained while the railroad is being operated by the receiver? In other words, is the receiver of a railroad operating the road, within the enumeration of the statute, either as proprietor, owner, charterer, or hirer? The court below held not, and therefore sustained a demurrer to a petition, the sufficiency of which is not otherwise questioned. It must be conceded that the action cannot be sustained unless it is given by the statute, and, as it is not claimed that the receivers are liable personally, the only statute which has application to the case is the following: "An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: (1) When the death of any person is caused by, the negligence or carelessness of the proprietor, owner, charterer, or hirer of any railroad, steam-boat, stage-coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence, or carelessness of their servants or agents." Rev. St. art. 2899. The action is not against the railway company whose property was in the hands of the receivers, and no inquiry arises whether in a case brought against the company the receivers, under any circumstances, might be deemed its servants or agents. To maintain the action it is necessary to hold that a receiver operating a railway under the appointment and control of a court is, within the meaning of the statute, "the proprietor, owner, charterer, or hirer of any railroad." By "hirer" we understand to be meant one who by contract acquires the right to use a thing belonging to another, and by "charterer" we understand to be meant one who by contract acquires the right to use a vessel belonging to another; and, as the statute embraces subjects to which these terms may be applied, we are of opinion that they were used in their ordinary sense, and we do not understand appellant to contend for any other meaning for them. But it is contended that the receivers were, within the meaning of the statute, "proprietors" or "owners," while appellees contend that these words cannot be applied to any person not holding property in his own right, although conceding that proprietorship or ownership, within the meaning of the statute, may exist without absolute title. It is insisted by appellees that the statute in question is in derogation of the common law, and must therefore be construed strictly; but the rule here invoked has been abolished by statute, which provides that "the rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes, but the said statutes shall constitute the law of this state respecting the subjects to which they relate, and the provisions thereof shall be liberally construed, with a view to effect their objects and to promote justice." Rev. St. Gen. Prov. § 3. The statute in reference to the construction of statutes contains the following: "The ordinary signification shall be applied to words, except words of art, or words connected with a particular trade or subject-matter, when they shall have the signification attached to them by experts in such art or trade, or with reference to such subject-matter." "In all interpretations the court shall look diligently for the intention of the legislature, keeping in view at all times the old law, the evil, and the remedy." Rev. St. art. 3138. These are but statutory declarations of rules of construction which had long been recognized by courts, and the statute but emphasizes their importance.

It is the duty of a court to give to language used in a statute the meaning with which it was used by the legislature if this can be ascertained;

and to do this, if the words used be not such as have a peculiar meaning when applied to a given art or trade with reference to which they are used in the statute, the only safe rule is to apply to them their ordinary meaning, for the legislature must be presumed to have used them in that sense in which they are ordinarily understood; and if, so applying them, the legislation in which they are found seems to be harsh, or not to embrace and give remedies for acts for which remedies ought to be given, the courts, for such reasons, are not authorized to place on them a forced construction for the purpose of mitigating a seeming hardship, imposed by a statute, or conferring a right which the legislature had not thought proper to give. It is the duty of a court to administer the law as it is written, and not to make the law; and however harsh a statute may seem to be, or whatever may seem to be its omission, courts cannot, on such considerations, by construction sustain its operation, or make it apply to cases to which it does not apply, without assuming functions that pertain solely to the legislative department of the government. It may be difficult to perceive a good reason why an action should not exist for an injury resulting in death, caused by the negligence of a receiver or his servants while operating a railway under order of court, as for an injury to a passenger not resulting in death, and subject to the same restrictions as to the manner and fund from which a judgment recovered should be satisfied; but this furnishes no reason why the right of action should exist in the one case and not in the other, where in the one the right does not exist unless given by statute, while in the other the right of action exists without a statute conferring it." If a receiver, within the meaning of the statute, is either a "proprietor" or "owner," then the ruling on the demurrer was wrong. If he is not, it was right. A receiver is an officer of the court that appoints him, when the law takes possession of the property to which the receivership relates, and, in cases of receiverships of railway property under the orders of the court appointing them, receivers often operate railroads, and assume the duties, burdens, and liabilities ordinarily imposed by law upon common carriers, in addition to the ordinary duties attaching to the position; but at all times they are only the agencies of the court, subject to its orders, and having no personal interest in the property in their hands resulting from the existence of the receivership, though responsible officially for the proper management and custody of property confided to their care, and, as other persons, personally responsible for their own unlawful acts working injury to others, but not so responsible for the negligence or unlawful acts of servants they may be compelled to employ in the business confided by the court to their management and control. When lawfully appointed, they are not the representatives of the company or persons when property may be placed in their possession and under their management, though they, in some cases, may be subjected to liability for charges arising under the permission of the courts appointing them, or from the negligence of themselves and their employes.

Examples of such charges upon railway companies' property in the hands of receivers are of almost daily occurrence in these cases in which the receipts of railway business, which are the property of a railway company in the hands of a receiver, are appropriated to the liquidation of claims arising from breach of duty as common carriers; but can such relations as they bear to property placed in their custody and management justify a holding that they are either the "proprietors" or "owners" of a railroad, within the meaning of the statute? One who has the legal right or exclusive title to anything is said to be a "proprietor." Webst. In many instances, if not usually, the word is the synonym of the word "owner." Abb.; Bouv.; Webst. The "owner" is said to be "he who has dominion of a thing, real or personal, corporeal or incorporeal, which he has the right to enjoy and to do with as he pleases, even to spoil or destroy it, so far as the law permits, unless he be prevented by some agreement or covenant which restrains his right." Bouv. "One who owns; a rightful proprietor; one who has the legal or rightful title, whether he is the possessor or not." Webst. Both words convey the idea of property in the thing in right of the person who is said to be the proprietor or owner, and exclude that

of a mere possessor in the right of another, although the possession may be coupled with the duty or obligation to take care of, or even to use, the thing in that other's right. Both words are doubtless often used to express right to property in a thing less than absolute or exclusive right, but when this occurs it will ordinarily appear from the context, and in all such cases the person holds for himself and in his own right; and, as stated in brief of counsel: "The right of such a person to the possession and control springs, not from an act to which the concurrence or consent of the owner is not required, as in the appointment of a receiver, but from the direct act of the owner or proprietor, who thereby clothes the person placed in the possession and control with the right to operate the same for his own benefit." This may be illustrated by reference to cases. In Pierce v. Railroad Co., 51 N. H. 591, it appeared that the Concord & Portsmouth Railroad was operated by the Concord Railroad under a lease for 99 years, and a question arose whether it was liable for property destroyed by fire from one of its locomotives, under a statute which provided that "the proprietors of every railroad shall be liable for all damages which shall accrue to any person or property by fire or steam from any locomotive or other engine of such road;" and, in view of a statute in force in that state which declared that the term "proprietors of a railroad" should "include the corporation to which any railroad was originally granted, or into whose hands it has subsequently passed, the assignees or trustees to whom any railroad has been mortgaged for the security of a debt, and any company or person to whom it may have been conveyed," it was held that within the meaning of the law the defendant was a proprietor, and, as such, liable. In Hall v. Brown, 54 N. H. 497, an action was brought to recover damages resulting from the obstruction of a highway by a locomotive under a statute which provided that "no such proprietors shall obstruct by their engine, cars, or train any highway more than ten minutes at any one time, under penalty of twenty dollars for each offense to the party delayed thereby." The defendant was not the absolute owner of the railroad, but at the time of the accident the railway was occupied and used by the defendant for his own benefit, and it was held that he was a proprietor, within the meaning of the statute. Many cases are cited under the word "owner," illustrating the use and meaning of that word under a great variety of facts, which show that absolute and exclusive right is not always necessary to ownership; and, on the other hand, that possession, when held in a fiduciary character, does not constitute ownership, unless the relation under which the possession exists be created by the act of one who held dominion, such as, in the ordinary acceptation of the words, is deemed proprietorship or ownership; and it is not believed that any adjudicated case can be found in which it has been held that a person not having a personal interest in or right to property was its proprietor or owner. Abb. Dict.

In the construction of the statute under consideration it is proper, in order to arrive at the intention of the legislature, to consider the association in which the words "proprietor" and "owner" are found; for it ought to be presumed that in enacting the statute, having, as it does, relation to the use of enumerated kinds of property by persons sustaining given relations to it, the legislature was prompted by the same reason to give actions against the persons or corporations to whom the act applies; that it was the intention to give such actions against those who stood in similar relations to property and its use, though the relations may not be of the same degree, rather than to give such rights of action against persons whose relations to properties enumerated and their uses were wholly dissimilar. The importance and propriety of doing this is emphasized when we take into consideration the fact that right of action for injuries resulting in death is given against the persons' enumerated in the statute under consideration, even where the injuries result from the "unfitness, negligence, or carelessness of their servants or agents;" while under the second paragraph of the act the persons against whom right of action is given are not made liable for the acts or omissions of their servants or agents. The words "hirer" and "charterer" apply to persons who, in their own rights, are entitled to possess, use, and have the benefits resulting from the use of

the thing hired or chartered, and those rights must be acquired by contract with persons having such dominion over the thing hired or chartered as enables them to confer on the hirer or charterer the right to use the thing hired or chartered, and to have the benefits resulting therefrom. The ordinary meaning of the words "hirer," "charterer," "owner," and "proprietor," as well as that attached to them by judicial decisions, being such that no person can hold either of these relations to property unless he has a personal interest in or right to it, would it not be contrary to all recognized rules of construction to hold that, when they are found thus associated, it was not the intention of the legislature to give to them the meaning ordinarily attached to them, where there is nothing in the statute tending to show that either of the words was used in some other sense? Looking to the character of the property named in the statute, if it was the intention of the legislature —as seems manifest by the language used—to give right of action against all persons and corporations sustaining to the property the relations which the words indicate in cases of injuries resulting in death caused by the negligence or the unfitness, negligence, or carelessness of their servants and agents, then there was necessity to name all the persons against whom right of action was intended to be given, so that any grade of ownership conferring personal right should be brought within the operation of the statute, and it was doubtless for the purpose of deciding all misconception as to the intent of the legislature that "hirers," "charterers," owners," and "proprietors" were named. The manifest purpose of the statute was to give right of action for injuries such as are complained of in this case against those in possession in their own rights of the classes of property named in the statute, when operated by themselves or by servants or agents of their own selection, for whose acts or omissions they ought to be responsible; and the language of a statute ought to be such as to imperatively require it before a court would be authorized to hold that such owners were intended to be made liable, directly or indirectly, for an injury occurring in the use of their property while under the management and control of an officer of a court having power to do with it as the court may direct, and to select his own servants, without regard to the wish of the owner. In cases in which railways are operated by receivers appointed by courts it is held that the receiver becomes a common carrier, subject officially to the liabilities attaching to that business, as well as to the liabilities of a master to the servant; and that, from the public nature of the business, earnings of the property, while in his hands, may be applied to discharge obligations arising in the course of the business; and it is true that in this way the owner of such property is made, through the appropriation of earnings of its property, to pay debts incurred through the negligence of a receiver or his servants. But those cases stand on exceptional ground, and are justified only by public considerations, not now necessary to consider. Such actions as that before us, however, stand on the statute which gives the right of action; and, while it cannot be denied that the legislature might give such right of action against receivers, and require judgment thereon rendered against them to be satisfied out of such funds as may be used to discharge obligations against them in other classes of cases, or even out of the corpus of the property, so far as only the owner's rights might be affected thereby, yet, unless this be done, no court would be justified in holding, under an act which in terms only gives such an action against the proprietor or owner, hirer, or charterer, that it was the intention of the legislature to subject even the earnings of a railway, which, as against all persons not having a right thereto conferred by contract, are as much the property of the owner of the railway as is the road itself, to the satisfaction of a claim based on the negligence of a receiver or his servants. It is ordinarily true that in the construction of a statute effect should be given to every word found in it, and it is contended that under this rule a meaning so essentially different must be given to the words "owner" and "proprietor" as to make the one or the other mean a person who has such right to possession and control as a receiver has; but this does not follow, and the rule is satisfied if the words be given a similar meaning, the difference being in the degree of right to the thing to which owner-

ship or proprietorship relates; and we are not called upon in this case to determine which of these words indicates absolute dominion, and which some lesser rights. The words "agents" and "servants," found in the statute under consideration, in a general sense both apply to persons in the service of another, but in a legal sense an agent is one who stands in the place of his principal,—his representative,—while a servant is one in the master's employment, but not clothed with any representative character.

The rule of construction which requires effect to be given to all the words of a statute never requires a meaning to be given to any word other than that it ordinarily bears, unless this is required by the context, and cases arise where it becomes proper to hold that words are tautological. We need not go beyond the statute under consideration to find an instance of this. This statute gives an action "where the death of a person is caused by the negligence or carelessness of the proprietor," etc., or where death is caused by the "negligence or carelessness of their servants or agents;" and there can be no doubt that the words "negligence" and "carelessness," as here used, mean identically the same thing, for negligence is but the omission of care, and the same is carelessness. It must be borne in mind that actions for injuries resulting in death can be maintained only against such corporations and persons as the statute gives such actions against, and only in favor of such persons as the statutes name, and the courts have no more power to extend its operation by construction not authorized by the words of the statute. If, perchance, an administrator of the estate of a deceased person, or the guardian of the estate of a minor or lunatic, should be required to operate for a time some of the vehicles for transportation of goods and passengers which might belong to such an estate, would it be claimed that the estate represented by him would be liable for an injury resulting in death, caused by the negligence of such an administrator or his servants, or of such a guardian or his servants? To hold that one having possession of and right to control property, as has an administrator, guardian, or receiver, is either the owner or proprietor of the property, would do violence to the ordinary understanding of the meaning of the words, as well as to the meaning attached to them, in a statute like that under consideration, by all judicial decisions.

It is claimed, however, that contrary rulings have been made, and we will briefly refer to the cases relied upon. In Murphy v. Holbrook, 20 Ohio St. 137, an action was brought by an administrator against receivers to recover damages for an injury resulting in the death of his intestate, which it was alleged occurred through the negligence of the agents of the receivers, and they were held officially liable. The action was brought, however, under a statute of the state of Ohio, which gave right of action in such cases against any person or corporation through whose wrongful act, neglect, or fault death resulted, if the injury would have given cause of action to deceased had he lived. Of the correctness of the decision under the statute on which it was based we think there can be no doubt, in so far as the question there decided can have any application to the question involved in this, for the receivers were persons who, under the act, might be made officially to pay damages, for their liability was not made to depend upon their relation to property. Under such a statute as that, they were liable, as receivers are liable, for injuries not resulting in death when caused by negligence in the business confided to their care. Little v. Dusenberry, 46 N. J. Law, 614, was an action brought against a receiver of a railway company's property for an injury resulting in death, based on a statute which provided that "in every such case the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages," etc. This, it will be seen, is substantially the same as the Ohio statute, and it was held that under it a receiver was liable officially to such an action, and there can be no doubt of the correctness of the decision, even in the absence of another statute. quoted in the opinion, which provided, when the property of a railroad company was placed in the hands of a receiver by order of the chancellor, that "all expenses incident to the operation of said railroad shall be a first lien on the receipts." The case of Lamphear v. Buckingham, 33 Conn. 238,

was an action brought against trustees in possession of a railroad, and operating it for the benefit of mortgage bondholders, to recover damages for an injury resulting in death. The statute then in force in that state provided that, in case the life of any passenger on a railroad, who was in the exercise of reasonable care, should be lost by the negligence of the railroad, the company should be liable to pay damages, not exceeding $5,000; and it was contended that by the express terms of the statute the right of action was limited to injuries received at the hands of railroad companies, but, on account of another statute, the court said: "The original eighth section of the act of 1853 authorized the action against the railroad company only; but we are of opinion that the act of 1858, which authorized and regulated the surrender of the road and franchises to trustees for the benefit of creditors, subjected the property in the hands of such trustees to liability, and them to suit under this statute." The inference is that, but for the statute referred to, the court would have held the trustees not liable. The case of Lyman v. Railroad Co., 59 Vt. 167, 10 Atl. 346, was one in which an action for an injury resulting in death was brought against a railroad company that was acting as receiver of two other railways, which it was operating in connection with a railroad it had leased, and the injury occurred on the leased road. In the opinion the court said: "If the court of chancery consented that its receiver might step outside his proper functions as receiver of the Vermont & Canada and Vermont Central Railroads, and engage as a lessee in business foreign to the administration of the property in the hands of the court, he stands, as to such business, and as to all persons employed by him or having business relations with him in the conduct of such foreign business, not as a receiver, in the sense that he is then an officer of the court, but as a party sui juris, acting as his own principal, and upon his own responsibility. The order of the court, if any, sanctioning his engagement in such business, is available to him in the settlement of his accounts as receiver of the roads in the hands of the court, but not as the gauge of his responsibility to third persons dealing with him." The court, however, does say that he would have been liable had he been in fact a receiver, and not a lessee; and we see no reason to doubt the correctness of this conclusion under the Vermont statute, which gives the right to action for the "rightful act, neglect, or default of any person, either natural or artificial." Erwin v. Davenport, 9 Heisk. 45, was also an action against a receiver to recover damages for an injury resulting in death, and it was held that the receiver, under the averments of the petition, would be personally liable for his own misfeasance; but the case can have no bearing on the question involved in this. We do not find that any other state in the Union has a statute in all respects the same as that in force in this state, and have been unable to find any case in which the question involved in this is considered; but, after holding the case under advisement for some time, in view of the importance of the question involved, as well as its novelty, and after giving to it full consideration, we are constrained to hold that the ruling of the court below was correct. Some judgments have been affirmed by this court that were rendered against receivers officially for damages for injuries resulting in death; but in these cases the question involved in this was neither suggested nor considered, and they cannot be considered as adjudications of the question. If it be desirable to make the property of a railway company liable in actions of this character on account of the negligence of a receiver in whose hands it may be, or on account of the negligence of his servants or agents, the legislature will doubtless so amend the law as to give such liability. The law is peculiar, in that it restricts liability for the negligence of agents and servants to persons and corporations engaged in given lines of business, no more dangerous in many of its branches than are many others in which the liability is made to depend on the wrongful act, unskillfulness, or negligence of the person or corporation to be affected. Whether such discriminations are conducive to the public welfare is a matter for consideration of the legislature. The judgment will be affirmed.