# J. V. Fleming v. E. L. Ashcroft et al.

No. 8085. Decided November 10, 1943.
Rehearing overruled December 15, 1943.
(175 S. W., 2d Series, 401.)

*Clower & Wilson, Potter & Bezoni* and *J. V. Fleming,* all of Tyler, *J. C. Jackson, Jr., Tom S. Williams,* both of Sulphur Springs, *Black, Graves & Stayton* and *Ireland Graves,* all of Austin, for petitioners.

The royalty interest conveyed under the second deed did not expire at the termination of the original lease for fifteen years. Germany v. Turner, 132 Texas 491, 123 S. W. (2d) 874; Hancock v. Butler, 21 Texas 804; Murphy v. Dilworth, 137 Texas 32, 151 S. W. (2d) 1004; Hopkins v. Hopkins, 103 Texas 15, 122 S. W. 15.

*J. K. Brim* and *T. B. Ramsey,* both of Sulphur Springs, *W. H. Sanford* and *Conan Cantrell, Goggans & Ritchie* and *J. W. Crosland, Jr., Bromberg, Leftwich, Gowan & Schmucker* and *H. L. Bromberg, Jr.,* all of Dallas, for respondents.

MR. JUDGE TAYLOR, of the Commission of Appeals, delivered the opinion for the Court.

February 4, 1924, Mrs. Susan B. Pierce leased to Leon F. Russ four tracts of land in Hopkins county aggregating about 620 acres. The consideration to Mrs. Pierce was the usual one-eighth of the oil and gas that might be produced from the land by the lessee under the term of the lease. A short time after leasing the lands to Russ she conveyed by deed to R. M. Loving, *subject to the terms and provisions of the lease as to the production of oil and gas,* what purported to be an undivided one-half interest, for a period of fifteen years from the date of the sale, in the royalty oil and gas under the lands. The next day Loving transferred to the FWC Corporation the portion thereof that lay under 175 acres of the first of the four tracts, title to which, as a result of assignments, rested in December, 1936, in J. V. Fleming to a 116/256 and in H. H. Waller to a 12/256. In 1933 Mrs. Pierce conveyed to what is designated as the Buchanan-Douglas group, certain undivided royalty interests in the entire first tract, and in 1936 sold an undivided interest to E. L. Ashcroft and D. S. Hager jointly. It is the respective claims to portions of the one-half royalty oil and gas interests in the 175-acre tract that are in controversy. No controversy is involved as to the ownership of any leasehold estate.

Fleming in 1940 filed suit, asserting title to his alleged 116/256 interest, naming as defendants Waller and several others

not necessary to be named here. Waller asserted by cross action against the other defendants title to his alleged 12/256 interest. Both Fleming and Waller alleged they acquired their respective interests (which collectively comprised the one-half interest sold to Loving) under the royalty deed from Mrs. Pierce to Loving, referred to above. Their interests were claimed in severalty and in no wise conflicted.

It is a sufficient statement to make here of the result of the trial and the appeal by defendants Ashcroft and others from the judgment rendered, to say that the trial court's judgment was in favor of Fleming and Waller, awarding to each respectively an interest in the one-eighth of the royalty in controversy, as well as respective recoveries of the value of royalty oil produced and sold; and that the Court of Civil Appeals reversed and rendered in part, and affirmed in part, the trial court's judgment. 168 S. W. (2d) 304.

The royalty deed from Mrs. Pierce to Loving is copied in full in the opinion of that Court. The deed stipulated it was subject to the Russ lease as to the production of oil and gas. The clause of the lease relating to production is, *in its entirety,* as follows: "This lease shall remain in force for a term of five years from its date, and as long thereafter as oil or gas * * * is produced from said land *by the lessee.*" Reference is here made (before stating the holding of the Court of Civil Appeals) to its opinion, for convenience in considering the terms of the deed in connection with the lease clause.

Based upon the rules of construction applied to the language and provisions of the deed in the light of the facts, the Court of Civil Appeals held that the term for which the royalty oil and gas conveyance to Loving and those holding under him, was for fifteen years and no longer; and held that this construction was inescapable because the deed was subject to the stipulation of the Russ lease *as to the production of oil and gas.*

It is noted, before considering the contentions on which the foregoing holding was made, that *no production was had under the Russ lease* and that it expired by its own terms on February 4, 1929; also that in 1935 and 1936 Mrs. Pierce executed oil and gas leases which collectively covered the 175-acre tract involved, and that it was under these leases that production *on the tract* was had in 1937, which still continues.

The contention made by appellees Fleming and Waller, in response to which the above holding of the Court of Civil Appeals was made, was that the effect of the reference in the deed to the clause of the lease relating to production had the effect to make the deed subject to, or to read into it, *that portion and only that portion* thereof reading "and as long thereafter as oil or gas is produced *from said land.*" They disregard in arging their contention, the further words of the clause, "by the lessee." They took the position that oil having been produced *on the tract* in 1937, within the fifteen-year term of the deed, the term was thereby extended for so long thereafter as oil was being produced *from said land.* The Court pointed out that the deed, when the phrase in its entirety was incorporated therein, stipulated that the grant should remain in force only as long thereafter as oil was produced *"from said land by the lessee"* (or his assigns). The Court pointed out further that the provisions as to extending the five-year primary term of the Russ lease being conditioned to become operative *only if the lessee* (or his assigns) was producing oil from the tract at the expiration of such term (which they were not, no production being had at any time under the Russ lease), the extension of the time of the royalty grant beyond the fifteen-year period never become operative; and that when *the entire provision of the phrase as to production* was incorporated into the deed, the language afforded no support to extend its fifteen-year term beyond its termination, February 19, 1939. The Court held that *since there was no production of oil* by Russ or anyone holding under him, the lease granted to him terminated at the end of its primary term of five years. The Court of Civil Appeals thus conclusively showed the fallacy, as against the contention of the appellees stated above, of the trial court's holding to the contrary.

Application for writ of error was filed by appellees Fleming and Waller, and was granted. The petitioners advanced in their application for the writ a theory materially different from that stated above, consequently the Court of Civil Appeals was without opportunity to consider the contentions on which the application for the writ as to the first point of alleged error, was predicated. This Court being of the view tentatively when the application was considered that the contentions urged by petitioners in support of their new theory were persuasive that the holding of the Court of Civil Appeals might be erroneous,, granted the writ. As will presently be shown our tentative view was not correct.

The first of the two points of error contained in the application presents the question as to whether the royalty interest

conveyed by Mrs. Pierce to Loving by her deed, terminated at the end of the fifteen-year period. Petitioners now contend in support of the first point, that the meaning of the deed is that if production had been had *under the Russ lease,* Loving and those holding under him, would have been entitled to share in the royalty oil and gas *under that lease* until February 19, 1939; and that their right to the royalty under the Russ lease having been *suspended* until that date on account of discovery of oil *on the tract* in 1937 under another lease, was subject to be reasserted by them at the end of the fifteen-year period. In other words, stating petitioners' contention as to the deed's meaning in the light of subsequent facts, it is that the parties understood from the terms of the deed when it was executed (two weeks after the Russ lease was executed) that it meant that if production was had under the Russ lease the grantee (in the deed) would be permitted to take a royalty interest *under that lease* for so much of the fifteen years as remained after discovery of oil *on the tract;* but that after expiration of the fifteen-year period Loving, and his assigns, owned an undivided one-half interest in the royalty oil in and under and that might be produced from the land. Using the exact language of petitioners in finally stating their contention, without its inescapable implications, it is that "viewing the deed as an integrated document, it means that if production is had under the Russ lease the grantee (in the deed) will be permitted to take a royalty interest under the lease for a period of fifteen years and no longer. After the expiration of the Russ lease the grantee will own an undivided one-half interest in the royalty under any other lease that may be executed in the future."

It will be of convenience, before considering the contentions on which the new theory was based, to set out in connection with the granting clause of the deed the agreements which serve to make clear the quantum of royalty interest granted by Mrs. Pierce to Loving. The numbering herein of the agreement clauses and the italics employed therein, as well as all italics in this opinion, are ours.

The deed follows the form ordinarily used in making general warranty conveyances and contains the clauses usually employed in such form. The granting clause recites that "Susan B. Pierce, a feme sole, * * * does grant, bargain, sell, convey, set over and assign and deliver unto R. M. Loving * * * (a) one-half interest in and to all of the oil * * * in and under, and that may be produced from" the lands described in the deed. (Here follows a metes and bounds description of the four tracts of

land covered by the conveyance and the agreements defining the extent of the grant.) The agreements, numbered in the order in which they appear in the deed, are as follows:

(1) "IT IS UNDERSTOOD that the sale of *this royalty* is for a period of fifteen years from February 19th, 1924, under the terms and provisions of oil and gas lease heretofore given by grantor herein as to the production of oil and gas, and at the expiration of *said fifteen years the title to the minerals conveyed herein is to revert, without further notice, to grantor herein.*

(2) "That the grantor herein is to receive all of the money paid for the lease executed on the above described land and premises, and the grantee's interest is confined and restricted to a production of oil and gas *found on said premises* above described, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil and gas, and removing the same therefrom.

(3) "And said above described lands being now under an oil and gas lease originally executed in favor of Leon P. Russ, and now held by _____, it is understood and agreed that this sale is made subject to said lease, but covers and *includes one-half of all the oil and gas royalty of said lease.*

(4) "IT IS AGREED and understood that none of the money rentals which may be paid to extend the terms within which a well may be begun under the terms of said lease is to be paid to the said R. M. Loving, and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the royalty only on said land, for oil and gas, privileges shall be owned jointly by *R. M. Loving and others, and grantor,* each owning one-half interest in all *royalty oil and gas in and upon said land.*"

The clause reciting the amount of the cash consideration for the sale and acknowledging receipt thereof, follows immediately upon the foregoing agreements, and immediately proceeds the habendum clause, which contains the covenant of warranty. The clause containing the warranty is as follows:

"TO HAVE AND TO HOLD, the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said R. M. Loving, his heirs and assigns forever, and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend

all and singular the said property unto the said R. M. Loving, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

There is in the record a photostatic copy of the deed (a type-written instrument), showing pen and ink interlineations and deletions. These indicate, as stated in the application for the writ, that the clauses and provisions of the deed were carefully reviewed and considered after it had been originally drafted and before it was executed and delivered. The form in which the deletions and interlineations appear has been disregarded in setting out the above agreements in order that the language, which is in no wise changed, may be more easily followed.

An integration of the agreements stipulated in the deed by the parties in connection with the granting clause, as set out above, shows a clear meaning contrary to that asserted in the above contentions made under the new theory urged by petitioners.

It will be noted that agreement (4) stipulated that *if for any reason the Russ lease became forfeited* (as it did because there was no production under it) the oil and gas royalty (not limited to that created by the Russ lease) *"on said land"* should be owned jointly by the grantor and Loving and those under him, each owning a "one-half interest in all royalty oil and gas *in and upon said land."* It is true that *it covered and included,* as stipulated in agreement (3), one-half of all the royalty oil and gas of the Russ lease; but the royalty conveyed was not limited to such one-half interest. This is made double clear by the further stipulation of agreement (2) that the "grantee's interest" was "confined and restricted" to the oil and gas that might be *"found on said premises."* The only possibility whereby the period could be extended beyond the fifteen years was for oil or gas, *which might be produced under the Russ lease,* to be produced thereunder that is, be produced *from the land by the lessee.* The Russ lease did not produce, hence there was no extension of the fifteen-year term.

The parties made clear in agreement (1) that the deed was being made subject to the provision of the lease as to production, not merely to a portion of the provision. The only condition upon which the fifteen-year period could have been extended having failed, Fleming and Waller could recover for no royalty oil and gas on the tract after the fifteen-year period ended. Thuss on Oil & Gas, p. 101, Sec. 73. They were entitled to that

produced before the period ended because it was oil *found on the premises* during the fifteen-year period.

 It appears clearly from the terms of the deed when integrated, that is when construed from its four corners (the condition for extension of the fifteen-year period having failed), that "Susan B. Pierce, a feme sole," did "grant, bargain, sell, convey, set over and assign and deliver to R. M. Loving" for a period of fifteen years from February 19, 1924, a "one-half interest in and to all of the (one-eighth royalty) oil and gas in and under, and that may be produced from the * * * lands." It appears with equal clarity, as provided in the concluding provision of agreement (1) that the parties meant that "at the expiration of said fifteen years the *title to the minerals* conveyed herein is to revert * * * to the grantor herein," if the Russ lease should become forfeited prior to that time. As stated by the Court of Civil Appeals, "we know of no rule of construction which would authorize the rejection and elimination of the conditional provision" (of the Russ lease as to production) if its terms, as the deed stipulates, are read into the deed. The primary term clause in the lease and the conditional provision in the deed for its extension are not in conflict. Neither is ambiguous. Both are of equal dignity.

It appears from what we have stated that we hold there is no repugnancy between the fifteen-year provision of the deed and the habendum and warranty clauses in which the word "forever" is used, when all of the provisions of the deed are considered together; and that agreement (4) in which the word "owned" appears is not inconsistent with the reverter stipulations of the deed, when considered in the light of all the stipulations of the parties.

To hold otherwise would result in denying any effect whatsoever to the fifteen-year limitation. It was not an absolute limitation. In order to so hold would require that the rule of construction to the effect that a deed is to be construed so as to effectuate the intention of the parties, determined from the deed as a whole and by giving effect to all of its parts, be disregarded. The term "owned" cannot, as used in agreement (4), mean "own absolutely and forever," because of the context. Chief Justice Stayton in Turner v. Cross, 83 Texas 218, 18 S. W. 578, 580, 15 L. R. A. 262, took occasion to say that the word "owner" could properly express either an absolute or exclusive right to property or a right less than absolute or exclusive. In the later case of Realty Co. v. Craddock, 131 Texas 88, 112 S. W. (2d)

440, this Court, speaking through one of its then Commissioners (now Associate Justice Critz), made a similar holding. As stated in 50 C. J. 772, "as applied to real property, the term 'owner' is descriptive of various rights to, and interests in land; * * *." When the word was used in the Loving deed the parties could not foresee what the status of the royalty interest being then conveyed would be at the end of the fifteen-year term. The royalty would be owned jointly, however, as stipulated in agreement (4), and each would own such interest as he then had, forever. A grantor may covenant to *forever* defend an *entire interest* in land, and may covenant, with equal binding force, to defend *forever a fifteen-year interest* therein.

We agree with the holding of the Court of Civil Appeals as set out in the following excerpt from its opinion:

"The intention must be gathered primarily from a fair consideration of the whole instrument, and the langauge employed therein and the construction given it should harmonize with the terms of the deed, including its scope, subject-matter and purpose. Rio Bravo Oil Co. v. Weed, 121 Texas 427, 50 S. W. (2d) 1080; Associated Oil Co. v. Hart, 277 S. W. 1043; Sun Oil Co. v. Burns, 125 Texas 549, 84 S. W. (2d) 442; Anderson-Kerr Drilling Co. v. Bruhlmeyer, 134 Texas 574, 136 S. W. (2d) 800; Pitts v. Camp, 120 Texas 558, 39 S. W. (2d) 608; 26 C. J. S. p. 328, Sec. 84. This rule of construction does not demand that every part of the deed shall be treated as of equal weight in the solution of every question that may arise."

There being in our opinion no real repugancy or inconsistency between the parts of the deed when the words and stipulations of the parties are given effect, we overrule the contentions of petitioners under their first point and hold that the interests in the royalty interest conveyed by Mrs. Pierce to Loving expired at the end of the fifteen-year period, and that the title to such interest reverted as provided in the deed.

■ Petitioners contend under the second of their two points of alleged error that the respondents, Ashcroft and Hager, and others, who purchased from Mrs. Pierce subsequent to the Loving deed, were not innocent purchasers for value and without notice of the claims to the land which are now being asserted under Beulah Guy. This point, in view of the disposition of the first, has bearing only upon the money judgments awarded petitioners for the value of oil produced on the 173-acre tract from the date of the discovery of oil in 1937 to the date of the termination of the fifteen-year term of the Loving deed, February 19, 1939.

In 1937 Mrs. Beulah Guy, nee Beulah Brannon, brought and later settled by compromise, a suit against the devisees named in the will of Mrs. Pierce, who died February 2, 1937, for recovery of a one-half interest in, among other lands, the tract involved herein. There is no dispute as to the following facts: J. K. Pierce acquired the land in 1911. He was then married to Susan B. Pierce and the land constituted a part of their community estate. Mr. Pierce died in 1918 intestate. Mrs. Pierce died testate in 1937. No children were ever born to the Pierces or either of them. Beulah, when a small child, was taken into the Pierce home by Mr. and Mrs. Pierce under an agreement with her father, George Brannon, to adopt Beulah. She lived with them as if their own child but was never adopted. She believed until her marriage to Mr. Guy that she was an adopted child. Both she and her husband continued after marriage on terms of amity and intimacy with Mr. and Mrs. Pierce until Mr. Pierce's death in 1918 and continued thereafter on such terms with Mrs. Pierce until her death in 1937, about the time oil was discovered on the lands deeded by her to Loving. Further details concerning the suit against the devisees under the will are set out in Guy v. Jones (Civ. App.), 132 S. W. (2d) ·490 and Jones v. Guy (Com. App.), 135 Texas 398, 143 S. W. (2d) 906. The cause, as appears from the opinion of the Supreme Court in the case last cited, affirmed the judgment of the Court of Civil Appeals. It placed its decision on the ground that the privies of Mrs. Pierce under the will were estopped, because of the breach of the agreement to adopt Beluah, to deny to her the status of an adopted child. It is undisputed that the claim of Mrs. Guy in her suit wa snot based upon an adoption, but upon *an agreement to adopt.*

The following excerpt from the opinion of the Court of Civil Appeals in the present case (based upon article 2578, R. C. S., and the holding of this Court upon the question of innocent purchaser as involved in Marshburn v. Stewart, 113 Texas 507, 254 S. W. 942 and Mayor v. Breeding (wr. ref.), 24 S. W. (2d) 242), sufficiently discloses the grounds of its holding on the question now under consideration:

"Paraphrasing the conclusions as stated · in Marshburn v. Stewart, supra, and Mayor v. Breeding, supra, both applicable to this record, we conclude that the law having invested Mrs. Pierce, as survivor of the community, with the apparent legal title in fee simple to this land, and such apparent title having passed to appellants for a valuable consideration, that before appellees can defeat the same the latter must show that at the time appellants purchased their respective interests they had

notice of the equitable rights of Mrs. Guy, or had notice of facts sufficient to put appellants upon inquiry, and that such inquiry, pursued with reasonable diligence, would have necessarily discovered the real facts upon which Mrs. Guy's claim to an interest in the land involved in this suit is predicated. 43 T. J. p. 621, Pars. 361 and 366. As stated in Edwards v. Brown, 68 Texas 329, 4 S. W. 80, "The policy of our laws is to protect purchasers against secret titles, whether they be legal or equitable.' See, also, Patty v. Middleton, 82 Texas 586, 17 S . W. 909. Constructive notice not having been visited upon appellants and the court having found that appellants had no knowledge of any fact sufficient to put them upon inquiry, appellants are entitled to protection as innocent purchasers against the claim asserted by plaintiff under Beulah Guy."

We approve the foregoing holding of the Court of Civil Appeals and the grounds and reasoning upon which it was based.

Since we are in accord with the holdings of that Court on the two questions presented by the application for the writ. we affirm its judgment reversing and rendering in part and affirming in part, as therein ordered, the judgment of the trial court.

Opinion adopted by the Supreme Court November 10, 1943.

Rehearing overruled December 15, 1943.