JAMES C. HO, Circuit Judge, concurring:
I write separately to respond to Judge Duncan's concurring opinion.
*242 The court today certifies certain issues to the Supreme Court of Texas to determine at what moment in time courts should identify the "unpaid commission due," and therefore subject to treble damages, under TEX. BUS. & COM. CODE § 54.004. Judge Duncan agrees with the decision to certify. But he writes separately because he also concludes that the text of the provisions in question makes the decision straightforward for the Supreme Court of Texas.
Judge Duncan and I emphatically agree that the proper function of the judiciary is to construe statutory texts faithfully and according to their plain meaning-to say what the law is, not what we may personally think the law should be. We nevertheless reach different conclusions as to the particular text before us, as textualists sometimes do. He concludes that the provisions in question allow only one permissible interpretation. By contrast, I conclude that the provisions before us are capable of competing plausible interpretations among reasonable jurists of good faith. And it is for that reason that I concur in the decision to certify issues to the Supreme Court of Texas.
I.
Judge Duncan is plainly correct that § 54.002 and § 54.003 fix the time at which a principal may become liable for a sales commission. But the dispute in this case concerns damages, not liability. And it is not clear to me what exactly in these liability provisions speaks to the timing that courts must use to determine damages under § 54.004. The liability and damages provisions perform distinct functions, and I do not see what in the text of the former sheds light on the interpretative question before us concerning the latter.
Judge Duncan theorizes that § 54.004 's reference to § 54.002 and § 54.003 requires courts to calculate the amount of any "unpaid commission due" at the time of violation-and not at the time of suit, or judgment, or some other moment. See TEX. BUS. & COM. CODE § 54.002(a)(2) (requiring written contracts to "state the method by which the sales representative's commission is to be computed and paid"); id. § 54.003 (providing that, for agreements that do not comply with § 54.002, "the principal shall pay all commissions due the sales representative not later than the 30th working day after the date of the termination").
But there is nothing in § 54.002 and § 54.003 that compels courts to treble what is due at time of violation. If there were, we might expect, for example, that altering the text of § 54.004 would create problems. Either the statute would point in different directions, or we would have concerns about surplusage. But that is not true here. Suppose the Legislature had specified in § 54.004 that courts should impose treble damages based on any "unpaid commission due at the time the civil action is filed." Such language would not create any conflict or tension with anything in § 54.002 or § 54.003. Or suppose the Legislature had made explicit what Judge Duncan submits is implicit, and specified in § 54.004 that courts should treble any "unpaid commission due but unpaid by the deadline specified in § 54.002 or § 54.003." This too would create no conflict or tension or surplusage with the language of § 54.002 and § 54.003.
So it would appear that nothing in the text of § 54.002 and § 54.003 forecloses or demands the application of § 54.004 at any particular time.
II.
There are additional reasons why I am not prepared at this time to embrace the *243 interpretation offered by the concurring opinion.
In other contexts, courts typically do not treat damages as fixed at the moment of liability, but instead recognize that damages can increase or decrease over time. Contract damages can decrease if opportunities to mitigate subsequently arise, and tort damages can decrease if the extent of injury is not what it seemed at the time of liability. See , e.g. , Pulaski Bank & Tr. Co. v. Texas Am. Bank , 759 S.W.2d 723, 736 (Tex. App.-Dallas 1988, writ denied) (diminishing damages award by the amount attributed to a failure to mitigate); RESTATEMENT ( SECOND ) OF TORTS § 910 cmt. b ( AM. LAW INST. 1979) ("[A]n event that indicates that the conduct is less harmful than had been supposed prevents or diminishes damages for the consequences.").
Similarly, tort damages can increase if a personal injury worsens. See , e.g. , J. Weingarten, Inc. v. Carlisle , 172 S.W.2d 170, 174 (Tex. Civ. App.-Galveston 1943, writ ref'd w.o.m.) (defendant liable not only for initial injury but resulting infection); 28 TEX. JUR. 3D DAMAGES § 115 ("[A] plaintiff may recover for all damages suffered up to the time of the trial and for those that are shown as reasonably and probably certain to be suffered in the future.") (emphasis added); RESTATEMENT ( SECOND ) OF TORTS § 910 cmts. b, c ("Any event occurring prior to the trial that increases the harmful consequences of the defendant's tortious conduct, if it is an event for the consequences of which the defendant is responsible, increases the damages recoverable to the same extent, whether the event has occurred before suit is brought or after suit.").
So a Texas court might reasonably conclude that, absent statutory text to the contrary, the Legislature would expect courts to construe and apply the damages provision of § 54.004 in a similarly dynamic fashion-rather than freeze the damages analysis at the time of the violation.
In addition, the Texas Legislature has directed courts to consider the consequences of a proposed statutory interpretation. So suppose, for example, that a principal owed a $1 million commission, and paid one day late, plus interest. Under this hypothetical, the agent does not suffer any "actual damages." Yet the agent would nevertheless be entitled to a $2 million windfall. If the plain meaning of the statutory text were clear, that would be one thing. See , e.g. , BankDirect Capital Fin., LLC v. Plasma Fab, LLC , 519 S.W.3d 76, 85 (Tex. 2017) ("Statutes that impose timelines naturally burden those who miss them."). But the provision before us is not so clear, to me anyway. A Texas court, in the face of an ambiguous statute, might conclude that the "consequences of a particular construction" make it less plausible than the alternative. TEX. GOV'T CODE § 311.023(5).
Finally, Texas courts might also consider how best to construe § 54.004 in light of TEX. CIV. PRAC. & REM. CODE § 41.004(a), which provides that "exemplary damages may be awarded only if damages other than nominal damages are awarded."
* * *
If this were a federal statute, then it would fall upon us to decide which among competing plausible interpretations is the correct one. But this case involves a Texas statute-one that is capable of multiple plausible constructions, and affects countless individuals and businesses across the state. Accordingly, the court has decided to certify these issues to the only court that can speak with authority for all Texans, in state and federal court alike. Certification will have the additional benefit of giving counsel the opportunity to address the issues identified in these two concurring *244 opinions, but not examined by either party in this case to date.
I do not presume to know how Texas courts would ultimately resolve these contested issues of statutory interpretation. And I do not intend anything in this opinion to signal any personal view as to how Texas courts ought to decide these matters. My point is precisely the opposite: Under our system of federalism, it is for Texas courts to decide unsettled questions of Texas law. I concur in the decision to certify these issues to the Supreme Court of Texas.
STUART KYLE DUNCAN, Circuit Judge, concurring:
I concur in certifying interpretation of the Texas statute at issue to the Texas Supreme Court because only that court can authoritatively interpret it. See, e.g., Westchester Fire Ins. Co. v. Admiral Ins. Co ., 152 S.W.3d 172, 183 (Tex. App.-Fort Worth 2004, pet. denied) (explaining that federal diversity decisions are "instructive" but "not binding as precedent on Texas state courts"). Unlike my colleagues, however, I find the statute amenable to a straightforward interpretation that I briefly set out below.
The statute in question provides for exemplary damages when a principal breaches a compensation agreement with a sales representative: the principal becomes liable for "three times the unpaid commission due the sales representative," as well as attorney's fees and costs. TEX. BUS. & COMM. CODE § 54.004(1), (2). In this case the principal concededly failed to pay commissions by the deadline in the parties' agreement, but eventually repaid all late commissions with interest (some after suit had been filed). The question is whether, in this scenario, the principal is still liable for "three times the unpaid commission due." The district court said "no," reasoning that the principal's eventual payment of the late commissions meant there were no longer any commissions left "unpaid"-i.e. , nothing still "due" and so nothing to treble. JCB, Inc. v. Horsburgh & Scott Co ., 2017 WL 6805045, at *5 (W.D. Tex. Oct. 25, 2017) (holding that "the commission is not 'unpaid' or 'due' because, as both parties agree, it has been paid with interest").
While declining to endorse the district court's reading of the statute, the majority reasons that the key phrase "unpaid commission due" in Section 54.004 leaves unanswered exactly when a commission becomes "due" for treble liability purposes. The majority suggests various possibilities-perhaps the relevant time is "at the moment the commission is owed," or "within some reasonable grace period" afterwards, or "at the time the suit is filed," or "when the principal is held liable for unpaid commissions."
In my view, the text and structure of the statute provide the necessary answers to such timing questions. Naturally, Texas courts read statutory phrases, not in isolation, but in "the context and framework of the entire statute." Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n , 518 S.W.3d 318, 326 (Tex. 2018) ; see also, e.g., State v. Gonzalez , 82 S.W.3d 322, 327 (Tex. 2002) (statutory meaning is gleaned "from the entire act and not just from isolated portions"); Jones v. Fowler , 969 S.W.2d 429, 432 (Tex. 1998) (Texas courts "read the statute as a whole and interpret it to give effect to every part"); see also, e.g., Occidental Chem. Corp. v. Elliott Turbomachinery Co. , 84 F.3d 172, 175 (5th Cir. 1996) (our court must interpret a state statute "the way the [state] [s]upreme [c]ourt would interpret the statute") (brackets added). Thus, a Texas court would interpret the phrase "unpaid commission due" by reading it in context and within the surrounding statutory *245 framework. Those contextual and structural clues show what the phrase means.
Notably, Section 54.004 makes treble liability turn on the operation of two other sections. A principal is liable for "three times the unpaid commission due" the sales representative only if the principal (1) "fails to comply with a provision of a contract under Section 54.002 relating to payment of a commission," or (2) "fails to pay a commission as required by Section 54.003." TEX. BUS. & COMM. CODE § 54.004. The cross-referenced sections address two distinct scenarios. Section 54.002 mandates that a compensation agreement be "in writing or in a computer-based medium," that it "state the method by which the sales representative's commission is to be computed and paid," and that a copy be given the representative. Id. §§ 54.002(a)(1), (a)(2), (b). By contrast, Section 54.003 concerns agreements that do not comply with the section 54.002 requirements and provides that, if such an agreement is terminated, "the principal shall pay all commissions due the sales representative not later than the 30th working day after the date of the termination." Id. § 54.003.
The interplay of these linked sections illustrates what "unpaid commission due" means in Section 54.004.
First, take a principal's breach under Section 54.002. In that scenario, Section 54.004 links treble liability for "the unpaid commission due" to the principal's "fail[ure] to comply with a provision of a contract ... relating to payment of a commission ." Id. § 54.004 (emphasis added). And Section 54.002 tells us that the contract must contain "the method by which the sales representative's commission is to be ... paid." Id. § 54.002(a)(2). So, connecting the dots between Sections 54.004 and 54.002, it appears that a commission becomes "due" precisely when the relevant "provision" in the parties' contract makes it due. That is just how the statute would work here: the parties' compensation agreement sets the commission deadline "on approximately the 10th of each month following the payment of a commissionable order," and so the principal would be liable for three times any commission unpaid by that agreed-upon deadline.[1]
Second, take a principal's breach under Section 54.003. (This is the section concerning agreements that do not comply with the Section 54.002 requirements.) In this scenario, Section 54.004 makes treble liability turn on a principal's failure to pay a commission "as required by Section 54.003." And Section 54.003 spells out that "all commissions due" are to be paid "not later than the 30th working day after the date of termination." Id. § 54.003. So, connecting the dots between Sections 54.004 and 54.003, it appears that an unpaid commission would be "due" for treble liability purposes no more than 30 working days after termination. In that situation, even if a principal paid all outstanding commissions on the 31st working day after termination, the principal would still be liable-by the statute's plain terms-for triple the "unpaid commissions" that had been "due" the day before.
To sum up: the two sections cross-referenced by Section 54.004 combine to give content to the phrase "unpaid commission due" that varies depending on the scenario presented. If there is a Section 54.002 breach of a provision stating when commissions are to be paid, then it is the parties' agreement that determines when *246 an "unpaid commission" is "due." That is the scenario presented here. On the other hand, if there is a Section 54.003 failure to abide by the statutory 30-day time-limit, then the statute itself determines when an "unpaid commission" is "due." Read this way, the two sections are complementary: Section 54.003 addresses a scenario where the parties' agreement-unlike one compliant with Section 54.002-fails to specify the "method by which the sale representative's commission is to be ... paid," and thus provides a one-size-fits-all answer to the question of when an unpaid commission is "due" for treble liability purposes. In either case, the statutory text and structure establish an objective benchmark for determining the timing (and hence the measure) of treble damages under Section 54.004.
One might object that this interpretation will lead to harsh results. After all, it would mean that a principal becomes triply liable for a commission paid even one day after the agreed-upon deadline (or, alternatively, one day after the statutory 30-day period, if it applies). There are several responses. First, that result may not seem so harsh if you are a sales representative dependent on commissions for your livelihood. You would welcome the statute's rigor because it would encourage principals to pay on time the money they owe you (money they already have in their pockets thanks to your efforts). Second, this strict result is consistent with other states' sales representative acts. See, e.g., GA. CODE § 10-1-702(b)(1), (2) (providing recovery as exemplary damages for "double the amount not timely paid as required"); MICH. COMP. LAWS § 600.2961(5)(b) ("[i]f the principal is found to have intentionally failed to pay the commission when due," awarding as exemplary damages "an amount equal to 2 times the amount of commissions due but not paid as required"). Third, if the Texas Legislature wished to write a more lenient provision, it knew how. See, e.g., TEX. BUS. & COMM. CODE § 17.50(b)(1) (allowing consumer to recover treble damages for certain deceptive trade practices if "the conduct was committed intentionally"). Finally, how "harsh" a provision ought to be-especially a provision so evidently punitive as this one-is a policy judgment left up to representative political bodies.[2] We judges, by contrast, "must take statutes as we find them[.]" Texas Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 637 (Tex. 2010) ; see also, e.g., Turner v. Cross , 83 Tex. 218, 18 S.W. 578, 579 (1892) (explaining that "the only safe rule is to apply to [words] their ordinary meaning ... and if, so applying them, the legislation in which they are found seems to be harsh, the courts are not authorized to place on them a forced construction for the purposes of mitigating a seeming hardship") (cleaned up).[3]
I respectfully concur.

I recognize that doubts could arise in this case over whether a particular commission were late, given that the deadline is "approximately the 10th of each month." Presumably such an issue would be determined by the trier of fact.

This is not one of the narrow category of civil cases calling for application of the rule of lenity. See, e.g., United States v. Thompson/Ctr. Arms Co., 504 U.S. 505, 518, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992) (observing that rule of lenity applies to civil cases when civil law at issue is incorporated into a criminal statute or when a criminal statute is invoked in a civil action).

To be clear, I also concur in the majority's decision to certify the question whether a plaintiff may recover fees and costs under Section 54.004(2) if he does not receive treble damages under Section 54.004(1). The majority observes that Texas courts "typically rely on the text of the statute for guidance" on such questions. But that undoubtedly correct statement of law makes answering the certified question easy: Section 54.004 contains no indication that it makes recovering fees dependent on recovering treble damages. Rather, the text makes recovering fees contingent only on the principal's breach of a contractual provision relating to commission payments under Section 54.002, or on the principal's failure to pay a commission as required by Section 54.003.