PD-1306-15

PD-1306-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/2/2015 9:22:44 AM
Accepted 10/2/2015 12:10:18 PM
ABEL ACOSTA
CLERK

**No. PD-_____**

**IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS
AUSTIN, TEXAS**

---

## MARK PATRICK McCAY,
## Petitioner/Appellant

## vs.

## THE STATE OF TEXAS,
## Respondent/Appellee

---

*On Appeal in Cause No. F11-00694-K
from Criminal District Court No 4.
of Dallas County, Texas*

*On Petition for Discretionary Review from
the Fifth District Court of Appeals of Texas
sitting at Dallas, Texas
in Cause No. 05-12-01199-CR*

---

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

**Lynn Pride Richardson**
**Chief Public Defender**
**Dallas County, Texas**

**Katherine A. Drew**
**Assistant Public Defender**
**State Bar No. 06117800**
**Kathi.Drew@dallascounty.org**

**Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399
(214) 875-2360** *(phone)*
**(214) 875-2363** *(fax)*

*Attorneys for Petitioner/Appellant*

FILED IN
COURT OF CRIMINAL APPEALS

October 2, 2015

ABEL ACOSTA, CLERK

# LIST OF PARTIES

**APPELLANT**
Mark Patrick McCay

**APPELLEE**
The State of Texas

**DEFENSE COUNSEL AT TRIAL**
Jeff Buchwald
7849 Alto Caro
Dallas, Texas 75248

Karen Lambert
6060 N. Central Expressway, Suite 560
Dallas, Texas 75206

**STATE'S ATTORNEY AT TRIAL**
Donna Strittmatter & Amy Croft
Assistant District Attorneys
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

**APPELLANT'S ATTORNEY ON APPEAL**
Katherine A. Drew
Dallas County Public Defender's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399

**STATE'S ATTORNEY ON APPEAL**
Patricia Poppoff Noble
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

**TRIAL COURT JUDGE**

The Honorable John Creuzot (now retired)
Criminal District Court No. 4 of Dallas County, Texas
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

**APPELLATE COURT JUDGES**

The Honorable Justices Molly Francis, Ada Brown and Craig Stoddart
Fifth Court of Appeals
600 Commerce St., Suite 200
Dallas, Texas 75202-4658

# TABLE OF CONTENTS

LIST OF PARTIES ........................................................................................... iii

INDEX OF AUTHORITIES.................................................................................vi

STATEMENT REGARDING ORAL ARGUMENT .................................................1

STATEMENT OF THE CASE...............................................................................1

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE ....................2

STATEMENT OF FACTS ...................................................................................2

QUESTIONS FOR REVIEW ...............................................................................4

ARGUMENT .......................................................................................................5

    Questions for Review 1 through 4: The Indictment Issues ............................5

    Question 1: *"Theft by Will"*..........................................................................5

    Question 2: *Omitted Pleadings re Testamentary Capacity and Undue
    Influence*.........................................................................................................8

    Questions 3 & 4: *Omitted Pleadings re Ownership and Property*................11

    Question 5: *Sufficiency Standard of Review*.................................................17

CONCLUSION ...................................................................................................20

PRAYER FOR RELIEF ....................................................................................21

CERTIFICATE OF SERVICE ...........................................................................22

CERTIFICATE OF COMPLIANCE....................................................................22

# INDEX OF AUTHORITIES

**Cases**

*Brooks v. State*,
323 S.W.3d 893, (Tex. Crim. App. 2010) ..................................................... 18, 20

*Byrd v. State,*
336 S.W.3d 242 (Tex. Crim. App. 2011) ...........................................................14

*Crabtree v. State*,
389 S.W.3d 820 (Tex. Crim. App. 2012) .............................................................8

*Farmer v. Dodson*,
326 S.W.2d 57 (Tex. Civ. App.—Dallas 1959, no writ).......................................9

*Geter v. State*,
779 S.W.2d 403 (Tex. Crim. App. 1989) ...........................................................14

*In re Estate of Bendtsen*,
230 S.W.3d 823 (Tex. App.–Dallas 2007, pet. denied) .......................................3

*Inman v. State*,
650 S.W.2d 417 (Tex. Crim. App. 1983) ...................................................... 12, 13

*Jackson v. Virginia*,
443 U.S. 307 (1979) ..................................................................................... 18, 20

*Lee v. Lee*,
424 S.W.2d 609 (Tex. 1968) ...............................................................................9

*Lehman v. State*,
792 S.W.2d 82 (Tex. Crim. App. 1990) .............................................................15

*McCay v. State*,
No. 05-12-01199-CR (Tex. App. – Dallas July 31, 2015) ....................................2

*McCay v. State*,
No. 05-12-01199-CR (Tex. App.–Dallas September 9, 2015)
 ............................................................................ 2,6,8,10,12,13,14,16,17,20

*Merritt v. State*,
368 S.W.3d 516 (Tex. Crim. App. 2012) ...........................................................18

*Rothermel v. Duncan*,
369 S.W.2d 917 (Tex. 1963) ...............................................................................9

*Turner v. Cross*,
83 Tex. 218, 18 S.W. 578 (1892) ........................................................................8

*Wirth v. State*,
   361 S.W.3d 694 (Tex. Crim. App. 2012) ....................................................... 18, 20

**Statutes**

TEX. CODE CRIM. PROC. art. 21.01 ....................................................................6

TEX. CODE CRIM. PROC. art. 21.08 ..................................................................14

TEX. CODE CRIM. PROC. art. 21.09 ..................................................................15

TEX. ESTATES CODE §252.201 ...........................................................................8

TEX. ESTATES CODE §252.203 ...........................................................................8

TEX. PENAL CODE §1.07(a)(22)(D) ..................................................................11

TEX. PENAL CODE §1.07(a)(35)(A) ..................................................................13

TEX. PENAL CODE §31.02 ...................................................................................6

TEX. PENAL CODE §31.03 ...................................................................................1

TEX. PENAL CODE §31.03(e) .............................................................................16

TEX. PENAL CODE §31.04 ...................................................................................6

TEX. PENAL CODE §31.05 ...................................................................................7

TEX. PENAL CODE §31.06 ...................................................................................7

TEX. PENAL CODE §31.12 ...................................................................................7

TEX. PENAL CODE §31.16 ...................................................................................7

TEX. PENAL CODE §32.21(d) ..............................................................................7

TEX. PENAL CODE §32.43(a)(2)(B) ....................................................................7

TEX. PENAL CODE §32.45(a)(1)(A) ....................................................................7

TEX. PENAL CODE §32.47(d)(1) ..........................................................................7

TEX. PROB. CODE §75 ........................................................................................8

**Rules**

TEX. R. APP. P. 66.3(b) ......................................................................................20

TEX. R. APP. P. 66.3(c) ......................................................................................20

TEX. R. APP. P. 66.3(f) ......................................................................................20

TEX. R. APP. P. 68.4(i) ........................................................................................2

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

**COMES NOW Mark Patrick McCay**, Petitioner herein and Appellant before the Court of Appeals, and respectfully submits this Petition for Discretionary Review.

## STATEMENT REGARDING ORAL ARGUMENT

This Petition presents a case of first impression, *i.e.*, whether "theft by will" is a criminal offense and, if it is, the requisites of an indictment for attempted "theft by will." This Petition also presents a question of whether, in conducting a sufficiency review, an appellate court can ignore extensive defense testimony and rely exclusively on the State's evidence. Oral argument is essential.

## STATEMENT OF THE CASE

Appellant was convicted by a jury of attempted theft of property valued in excess of $200,000.00 in violation of TEX. PENAL CODE §31.03. (CR1: 6,186; RR5:[1]9,28). The trial court assessed punishment at 10 years' imprisonment, probated for 4 years, and a fine of $1000.00 (CR1:190).

---

[1] The reporter's record was not prepared in sequential order and will be referred to as follows:
    RR1-RR10: Ten volumes of trial testimony filed on January 7, 2013;
    RRSupp: Record from trial for June 18, 2012; (precedes RR9 in order of trial);
    RRSupp 1: Record from pretrial hearing on December 17, 2007;
    RRSupp 2: Record from pretrial hearing on January 11, 2008;
    RRSupp 3: Record from pretrial hearing on February 15, 2008;
    RRSupp 4: Record from pretrial hearing on October 19, 2011;
    RRSupp 5: Record from pretrial hearing on May 31, 2012.

1

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

On July 31, 2015, in an opinion slated for publication, the Court of Appeals for the Fifth District of Texas affirmed Appellant's conviction. *McCay v. State*, No. 05-12-01199-CR (Tex. App. – Dallas July 31, 2015). A motion for rehearing was filed on August 13, 2015. That motion was denied on September 9, 2015.

On September 9, 2015, the Court of Appeals also issued an Opinion Nunc Pro Tunc, slated for publication, correcting clerical errors in the original opinion. *McCay v. State*, No. 05-12-01199-CR (Tex. App.–Dallas September 9, 2015) (not yet published) (attached as an Appendix as required by TEX. R. APP. P. 68.4(i)). This Petition is timely if filed on or before October 9, 2015.

## STATEMENT OF FACTS

This was a long, hotly contested trial involving extensive, conflicting and complex testimony. The Court of Appeals' opinion recites many, but not all, of those facts. *See* Appendix and arguments under Question 5, *infra.*

On February 22, 2005, Mary Ellen Bendtsen, aged 88, executed a will (the "Baylor will") while she was in Baylor Hospital after suffering a stroke. (RR5: 41; SX 1). In this will, Bendtsen disinherited her only child, Frances Ann Giron, leaving Giron only a "cradle" rocking chair. (SX 5). Aside from two other bequests of personal property, Bendtsen left the bulk of her estate to her longtime friends, Appellant and Justin Burgess. (SX 1,3,5). This was consistent with the intent

2

Bendtsen had expressed over a long period of time to various close friends. (RRSupp:155-58,183-184,187; RR9:49,59,117-119,166-167,174,177).

Bendtsen's main asset was a 5/12 interest in a large, old house located at 4949 Swiss Avenue, which everyone knew she loved.[2] (RR5:113,117; RR6:242; RR7:208; RRSupp:167-168). As one friend described it: "Mary Ellen was the house and the house was Mary Ellen." (RRSupp:155-158,168,187). The appraised value of the house in 2005 was $656,870.00. (RR5:170).

Bendtsen died on March 2, 2005. (RR5:53). That same day, an application to probate the "Baylor will" was filed with the Dallas County District Clerk. (RR5:95; SX 5). An application to probate a prior will that had been executed by Bendtsen in 2002, naming Giron as her sole beneficiary (the "Florida will"), was also filed that day. (RR5:64,80-81,86). Ultimately, the "Baylor will" was set aside by a probate court and the "Florida will" was given effect.[3] Appellant was subsequently charged with and convicted of attempted theft for causing Bendtsen to execute the "Baylor will" and for filing the "Baylor will" for probate.

---

[2] The Swiss Avenue house had been purchased by Bendtsen's parents, who left it in equal shares to their three children: Bendtsen, Ann, and Lawrence. (RR5:111-114,126-128,132; RRSupp:167). When Lawrence died, his surviving wife received half his interest, while the other half of his interest, *i.e*. 1/6, was divided between Ann and Bendtsen, raising their interest in the house to a 5/12 interest each. (RR5:128; *see also* SX 11).

[3] *See In re Estate of Bendtsen*, 230 S.W.3d 823 (Tex. App.–Dallas 2007, pet. denied).

# QUESTIONS FOR REVIEW

## Question 1

*Is "theft by will" a criminal offense?*

## Question 2

*If "theft by will" is a criminal offense, may an indictment for attempted "theft by will" omit pleadings regarding the testatrix's testamentary capacity and/or undue influence?*

## Question 3

*If "theft by will" is a criminal offense, may essential theft pleadings regarding ownership be omitted when the offense alleged is an attempted "theft by will?"*

## Question 4

*If "theft by will" is a criminal offense, may essential theft pleadings regarding the description of property be omitted when the offense alleged is an attempted "theft by will?"*

## Question 5

*By looking only to the State's evidence and ignoring defense evidence, did the Court of Appeals apply an improper standard of review in evaluating Appellant's challenge to the sufficiency of the evidence?*

# ARGUMENT

## Questions for Review 1 through 4:
## The Indictment Issues

Questions 1 through 4 center on the indictment[4] which alleged as follows:

> …with specific intent to commit the offense of Theft of *Property* of an aggregate value of $200,000 or more, did all of the following, which amounted to more than mere preparation that tended but failed to effect the commission of the said intended Theft, to-wit: Defendant, with *intent to deprive any other person* having a greater right of possession of *the property* than Defendant, upon the death of Mary Ellen Bendtsen, *did cause* Mary Ellen Bendtsen *to execute a will* naming Defendant as the beneficiary, to receive her property upon her death; and Defendant did thereafter *file said will for probate*.

(CR1: 99) (emphasis added). In upholding this indictment, the Court of Appeals essentially gives the State *carte blanche* to prosecute a person for "theft by will" without specific legislation authorizing such a prosecution and with the most cursory of allegations and notice.

## Question 1: *"Theft by Will"*

The State alleged that Appellant committed a crime because he "caused" Bendtsen to make a will in his favor and then filed that will for probate. (CR1: 99). Appellant argued, both at trial and on direct appeal, that because no law declares

---

[4] This prosecution was on-going for many years and Appellant was indicted multiple times. (CR1: 6,74,88-89,99; CR2: 12,49,142).

either act illegal,[5] either singularly or in conjunction, the indictment failed to allege an offense.

The Court of Appeals recognized Appellant's arguments, and agreed to a point,[6] but found that, because the indictment also alleged that Appellant did these acts "with specific intent to commit the offense of theft," these acts amounted to the criminal offense of "theft by will." *McCay*, slip op. at 5. The Court of Appeals also held that the general theft statute, TEX. PENAL CODE §31.03, is broad enough to encompass an offense of "theft by will" without the necessity of legislative action. *Id.* at 8. As that Court stated: "The only will contests that can be 'criminalized' are those in which a will proponent knowingly submits a will for probate with the specific intention of stealing an estate from others with the legal right to inherit." *Id.* at 9.

Appellant recognizes that many separate theft offenses which pre-dated the 1974 Penal Code were subsumed into the general theft statute in 1974. TEX. PENAL CODE §31.02. What the Court of Appeals failed to recognize was that not all forms of theft were subsumed into the general statute and many specific forms of theft survive today as separate offenses. *See* TEX. PENAL CODE §31.04 (theft of service);

---

[5] *See* TEX. CODE CRIM. PROC. art. 21.01 (an indictment must accuse the defendant of an act constituting an offense).

[6] The Court of Appeals stated: "Appellant argues that causing a person to execute a will and filing that will for probate are not illegal acts. If that conduct were standing alone, he would be correct." *McCay*, slip op. at 5.

6

TEX. PENAL CODE §31.05 (theft of trade secrets); TEX. PENAL CODE §31.06 (theft by check); TEX. PENAL CODE §31.12 (theft of multichannel video services); TEX. PENAL CODE §31.16 (organized retail theft). These offenses all have particularized elements and, hence, particularized pleading requirements.

The Court of Appeals also failed to recognize that other Penal Code provisions specifically criminalize conduct within the realm of wills and probate. *See* TEX. PENAL CODE §32.21(d) (forging a will); TEX. PENAL CODE §32.43(a)(2)(B) (commercial bribery by an executor or administrator); TEX. PENAL CODE §32.45(a)(1)(A) (misapplication of fiduciary property by an executor or administrator); TEX. PENAL CODE §32.47(d)(1) (altering, destroying or concealing a will with intent to defraud or harm). To date, the Legislature has not chosen to criminalize the acts of (1) causing a person to make a will in their favor and/or (2) filing that will for probate. Moreover, a crime of "theft by will" would necessitate certain particularized pleadings not provided for in the general theft statute, such as a lack of testamentary capacity by the testatrix or the exercise of undue influence by the defendant. *See* arguments and authorities under Question 2, *infra*.

The Court of Appeals further failed to address arguments made by Appellant that he was required to deliver the "Baylor will" to the clerk of the court that has jurisdiction over the decedent's estate after receiving notice of the death of the testatrix; criminal penalties exist for a person having a will who fails to deliver it to

7

a court. TEX. ESTATES CODE §§252.201,252.203 (formerly TEX. PROB. CODE §75).

The State cannot both require conduct and then criminalize that same conduct.

Lastly, by reading the theft statute in such a global manner, the Court of Appeals has essentially created a new crime and thereby impermissibly legislated from the bench. *See Turner v. Cross*, 83 Tex. 218, 18 S.W. 578, 579 (1892) (holding that an appellate court administers the law as it is written and is not permitted to legislate from the bench); *Crabtree v. State*, 389 S.W.3d 820 (Tex. Crim. App. 2012) (Hervey, J. concurring) (same).

**Question 2: *Omitted Pleadings re Testamentary Capacity and Undue Influence***

Appellant has argued that, in order to properly charge an offense of "theft by will," (assuming such an offense exists) the indictment must, of necessity, have alleged that Bendtsen lacked testamentary capacity[7] or that her testamentary capacity was undermined by undue influence. The Court of Appeals, however, held that the indictment need not allege either because (1) "[t]hese terms…are rooted in the civil law and are meaningful in probate proceedings"[8] and (2) appropriation of property is unlawful if the owner did not give effective consent. *McCay*, slip op. at 6. The logic employed by the Court of Appeals reveals precisely

---

[7] Prior indictments had contained this allegation. (CR2: 12,49,142).

[8] The implication is that these terms have no meaning in a criminal prosecution at all. Yet, the State spent the bulk of the trial attempting to prove both concepts. *See McCay*, slip op. at 10-17.

8

why "theft by will" is not a criminal offense subsumed within the general theft statute or, if it is, why it was not properly alleged in the instant indictment.

*Lack of Testamentary Capacity and/or Undue Influence Allegations*

If Bendtsen had not possessed testamentary capacity because of mental infirmity on the day the "Baylor will" was executed, then that will was invalid *ab initio*. *Lee v. Lee*, 424 S.W.2d 609, 611 (Tex. 1968). If, however, Bendtsen possessed testamentary capacity when she executed the "Baylor will," then her wishes were paramount, *Farmer v. Dodson*, 326 S.W.2d 57, 61 (Tex. Civ. App.— Dallas 1959, no writ), absent a showing that she had been subjected to undue influence. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). Whether Bendtsen had testamentary capacity bears directly on whether any act of Appellant's "caused" her to make a will she would not otherwise have made, *i.e.*, whether he exerted undue influence on Bendtsen and/or had criminal intent to steal. Appellant cannot be guilty of "causing" Bendtsen to make the "Baylor will," regardless of what acts he may have engaged in, if any, unless those acts rose to the level of undue influence.[9]

---

[9] Indeed, the trial court recognized this principle, telling the parties prior to trial:

> THE COURT: If the State puts on a case that this lady, of her own accord executed a will, *whether they talked her into it or not*, but of her own accord… that is not a criminal offense as far as I'm concerned. It has to be that all this was done with intent to commit the offense of theft…*If this was just a routine will situation, we're out of here.*

(RR3: 5) (emphasis added).

Because the indictment failed to negate testamentary capacity, either because of mental infirmity or undue influence, the indictment failed to allege "theft by will." The Court of Appeals failed to recognize that, as written, the indictment did not allege a criminal offense and should have been dismissed.

*Lack of Effective Consent*

The Court of Appeals excused the lack of pleadings regarding testamentary capacity and undue influence on grounds that appropriation of property is unlawful if the owner did not give effective consent. *McCay*, slip op. at 6. That Court, however, missed the point that the indictment did not allege a lack of effective consent *at all*. (CR1: 99). Nevertheless, despite this pleading vacuum, the Court of Appeals opined two ways in which consent may not be effective: 1) if it is given by someone who by reason of mental defect is known by the actor to be unable to make reasonable property dispositions or 2) if given by someone who by reason of advanced age is known by the actor to have a diminished capacity to make informed and rational decisions about the reasonable disposition of property. *McCay*, slip op. at 6 (*citing to* TEX. PENAL CODE §§31.01(3)(C),31.01(3)(E)). Recognizing that neither method was alleged in the indictment, the Court of Appeals reasoned that "these are questions of proof, and the indictment did not need to set out the manner and means by which the State would prove the

attempted theft." *Id*. These are questions of proof, however, only if a lack of effective consent is alleged, which it was not.

While it is generally true that manner and means need not be alleged in an indictment, the negation of any exception to an offense is an "element of the offense" which must be alleged. TEX. PENAL CODE §1.07(a)(22)(D). In order to properly allege a "theft by will" crime, it was essential that the indictment allege either that Bendtsen lacked testamentary capacity (in which case she could not give effective consent to the bequests in the "Baylor will" at all) *or* that Appellant exercised undue influence on Bendtsen (which rendered her consent ineffective). Because neither a lack of testamentary capacity, undue influence, nor a lack of effective consent (due to advanced age, mental infirmity or some other reason) was alleged in this indictment, the Court of Appeals erred in concluding that the indictment was sufficient to allege attempted "theft by will."

### Questions 3 & 4: *Omitted Pleadings re Ownership and Property*

The indictment alleged that the owner was "*any other person* having a greater right of possession of the property than Defendant."[10] (CR1: 99) (emphasis added). The indictment alleged that Appellant sought to appropriate property, but

---

[10] Prior indictments alleged that "Frances Giron, an heir," was the owner of the property. (CR2: 12,49,142).

11

failed to give *any* description of *any* of that property.[11] The Court of Appeals erred by finding that neither element was essential. *McCay*, slip op. at 5-8.

*Attempt*

The Court of Appeals held that the indictment did not need to allege ownership or describe the property which was the subject of the theft because the indictment alleged an attempted theft. *McCay*, slip op. at 5.

Appellant recognizes that there is case law which holds, generally, that there need not be an allegation of all constituent elements of the offense of theft in a charging instrument dealing with the offense of attempted theft. *Inman v. State*, 650 S.W.2d 417, 420 (Tex. Crim. App. 1983). The Court of Appeals relied on *Inman* to conclude that an indictment for attempted "theft by will" need not allege any of the underlying elements of a theft. In so doing, however, that Court failed to consider the underlying facts of *Inman* which render that opinion distinguishable from the case at bar. *Inman* dealt with factual allegations regarding the manner in which the crime was committed, not with the absence of required pleading elements. *Id*. Additionally, the indictment in *Inman*, for attempted theft of an automobile, is further distinguishable because it alleged *both* a named owner and

---

[11] Prior indictments alleged Bendtsen's property as "real property located at 4949 Swiss Avenue" and "furniture, eating utensils, dishware and other items unknown to the grand jury." (CR2: 49,142).

12

gave a description of property, neither of which are alleged in the indictment in the case at bar. *Id*.

To the best of the undersigned attorney's research, this Court has never specifically held that an indictment for attempted theft may omit allegations both as to ownership and a description of property which was the subject of the attempted theft. Yet, the Court of Appeals' opinion requires that neither allegation need be included in an indictment for attempted "theft by will."

### *The Lack of Pleading on Ownership*

While not requiring an ownership allegation, the Court of Appeals nevertheless held that the allegation of "any person" who has "a greater right to possession of the property" was sufficient to allege ownership. *McCay*, slip op. at 7-8 (referencing TEX. PENAL CODE §1.07(a)(35)(A)). That Court actually found dual ownership in that (1) at the time Appellant caused Bendtsen to execute the Baylor will, she was the owner of the property at issue and (2) because the property would not pass until Bendtsen's death, the owner(s)—who would be deprived of possession of the property by Appellant—were those who would take Bendtsen's estate in the absence of the "Baylor will." *McCay*, slip op. at 6. The Court of Appeals saw no discrepancy between these two divergent conclusions.

The Court of Appeals also reasoned that, because the identity of the person who could take Bendtsen's property after her death could change between

13

execution of the will and Bendtsen's death, and when "appellant formed the specific intent to steal Bendtsen's estate, he could not have known who would take that estate but for his conduct," the State's allegations sufficed. *McCay*, slip op. at 7-8. While this logic might have relevance in analyzing the sufficiency of the evidence, it begs the question of the sufficiency of the indictment because, by the time the indictment was returned, the owner of Bendtsen's estate was known and could easily have been identified in the indictment.

Appellant, in written briefs and oral argument to the Court of Appeals, relied on *Byrd v. State* 336 S.W.3d 242 (Tex. Crim. App. 2011) for the proposition that, in *any* theft case, an owner must be named. Appellant also relied on TEX. CODE CRIM. PROC. art. 21.08, which provides that, when the alleged theft is from an estate, ownership may be alleged in the executor, administrator or any heir of the deceased person. The Court of Appeals' opinion, however, failed to discuss, much less distinguish, either *Byrd* or the requirements of Article 21.08.

Nor did the Court of Appeals analyze how the jury could be expected to evaluate lack of consent in the absence of a named owner. In a theft prosecution where the State relies upon a defendant's act or omission to negate consent, the indictment must allege which of the statutory negatives vitiated consent, or the indictment will be subject to a timely motion to quash for lack of notice. *Geter v. State*, 779 S.W.2d 403, 407 (Tex. Crim. App. 1989). The State relied on specific

14

acts to prove attempted theft, *i.e.*, that Appellant (1) "*caused*" the execution of the "Baylor will" and (2) *filed* that will for probate. (CR1: 99). Specific pleadings regarding an owner's lack of effective consent were, therefore, essential.

Furthermore, the Court of Appeals did not discuss the lack of a named owner in the indictment vis-à-vis the jury charge, which references an "owner" multiple times and which permitted conviction only if the jury found that the attempted appropriation was "without *the owner's* effective consent." (CR1: 178-180) (emphasis added). Without an allegation of a named owner, and without an allegation of a lack of effective consent of that owner,[12] the jury could not evaluate whether Appellant had attempted an unlawful appropriation of property.

*The Lack of a Description of Property*

Specific allegations regarding property are required in a theft indictment. TEX. CODE CRIM. PROC. art. 21.09. A theft conviction can never rest, in whole or in part, upon theft of property not alleged in the indictment as stolen. *Lehman v. State*, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990). Yet, this indictment failed to describe *any* property which was the subject of the alleged attempted theft. Appellant's research reveals no case law which dispenses with a description of

---

[12] It is easy to understand defense counsel's objection to the jury charge: "the jury doesn't know who to apply the effective consent to, to Mary Ellen Bendtsen or whether it applies to the heirs." (RR9: 200-201).

15

property in an attempted theft. Yet, the Court of Appeals' opinion failed to discuss the requirements of Article 21.09.

Despite finding that the indictment did not need to describe the property at all, the Court of Appeals nevertheless held that the "property at issue was the property in Bendtsen's estate, that is, whatever she owned when she died." *McCay*, slip op. at 6. Relying on civil law, that Court stated that the allegation in the indictment–"her property at her death"–was sufficient to allege the property Appellant intended to steal.[13] *Id.* at 7.

That Court's logic ignored Appellant's arguments that theft is a valuation crime and the degree of theft is dependent on the value of the property. TEX. PENAL CODE §31.03(e). The indictment alleged that Appellant attempted to steal "property" in an aggregate amount of $200,000.00 or more. (CR1: 99). The value of the property in question can hardly be determined in the absence of a description of that property. Certainly, the value was crucial to a jury's determination of whether the aggregate value of the property was in excess of $200,000.00 as

---

[13] In this regard, the Court of Appeals' language appears to bless an allegation of a "contingent crime," *i.e.*, forming intent to steal based on some potential, as yet unascertained future benefit.

16

alleged[14] or whether a lesser degree of theft, on which the jury was charged, (CR1: 183,186), was a more appropriate verdict.

This indictment was returned many years after Bendtsen died. The property in her estate was known. The fact that the making of the "Baylor will" and the filing of that will were "separated by time," *McCay*, slip op. at 8, does not excuse the State's failure to plead facts affirmatively known prior to the return of the indictment.

## Question 5: *Sufficiency Standard of Review*

In rejecting Appellant's challenge to the sufficiency of the evidence to support his conviction for attempted theft, the Court of Appeals looked *only* to the State's evidence and did not refer to or discuss the extensive defense testimony introduced at trial to refute the prosecution's case. *McCay*, slip op. at 9-17. The Court of Appeals thus applied an improper standard of review.

While it is true that an appellate court reviews the evidence in the light most favorable to the verdict, that court must review *all of the evidence* to determine whether any rational trier of fact could have found the essential elements of the

---

[14] The only proof at trial of the value of Bendtsen's property, other than a $65,000 bank account with rights of survivorship to Giron, was testimony that her 5/12 interest in the Swiss Avenue house was worth $273,695.00. (RR5: 170). Because Appellant and Burgess were bequeathed Bendtsen's property in equal shares, (SX 5), Appellant's potential interest in the house, *i.e.,* 5/24, could only be valued at $136,847.50. Under this indictment, it cannot be known what other property the State relied on to meet the $200,000.00 threshold.

17

offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Evaluating the evidence in the light most favorable to the verdict is *not* the same as looking *only* to the State's evidence of guilt and ignoring the defense evidence. An appellate court cannot only emphasize evidence that favors it's holding while ignoring controverting testimony. *See Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012) (finding that a court of appeals incorrectly applied the *Jackson* standard by employing a "divide-and-conquer" approach which failed to consider all of the evidence); *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012) (reversing a court of appeals for selectively emphasizing "snippets of the record that ostensibly favored its holding" while ignoring controverting testimony).

Here, the Court of Appeals ignored defense evidence which showed that Bendtsen and her daughter had become estranged in the years preceding Bendtsen's death. (RR7:78,122; RR9:29-30,55). Evidence of Bendtsen's continuity of intent, *i.e.*, that over a period of time Bendtsen had expressed a desire to leave her property, particularly her house, to Appellant,[15] was similarly ignored. (RRSupp:155-158,183-184,187; RR9:49,59,117-119,166-167,174,177). That Court failed to acknowledge the contents of State's Exhibit 1, a video of the execution of

---

[15] Indeed, in its Brief on direct appeal, the State even admitted that Bendtsen "had expressed a desire to leave her estate to Appellant." (State's Brief at 4; *see also* State's Brief at 16).

18

the will, wherein Bendtsen's intent is unequivocally expressed, *i.e.*, that she did not want her daughter to inherit her estate but wanted to leave her property to "the boys," *i.e.*, to Appellant and Justin Burgess.

The defense evidence at trial, and State's Exhibit 1, are relevant to whether or not Appellant had criminal intent in any of his actions vis-à-vis Bendtsen and the making of the "Baylor will," whether Bendtsen had the capacity to execute the will, and whether she consented to the dispositions made by the "Baylor will." The defense evidence at trial established that the "Baylor will" was a valid expression of Bendtsen's wishes regarding her property. The defense demonstrated that Bendtsen did not lack testamentary capacity, nor was she deceived, coerced, forced or threatened into signing the "Baylor will." The defense demonstrated that none of Appellant's actions were done with the intent to steal Bendtsen's estate or influence her decision to make a will in his favor but, rather, that Bendtsen freely sought to give Appellant a gift of her property. The defense affirmatively established that Bendtsen was a proud, independent woman who, being angry at her daughter and still possessing sufficient mental capacity, acted on her long held desire to give her property to two dear friends as opposed to the daughter who had angered and humiliated her at the end of her life. (RRSupp:151,208,209-228; RR9:5-101,102-130,155-190).Yet, the Court of Appeals' opinion makes it appear as if no defense evidence was presented at all. As such, that opinion fails to comply

19

with the dictates of *Jackson* and *Brooks* and thus is in conflict with those decisions. TEX. R. APP. P. 66.3(c).

Additionally, the Court of Appeals, in several instances, misstated and/or mis-characterized key evidence; these errors were pointed out, in detail, in Appellant's Motion for Rehearing, pp. 6-12. Yet, the only corrections made by that Court in the Opinion Nunc Pro Tunc were to change the date originally listed for Bendtsen's stroke and the execution of the "Baylor will." *McCay*, slip op. p. 3. Consequently, this Court should conduct an independent review of the sufficiency of the evidence in this case. *Wirth*, 361 S.W.3d at 698. In the alternative, this Court should remand this case to the Court of Appeals with instructions to conduct a proper sufficiency review.

## CONCLUSION

The Court of Appeals, by finding that "theft by will" is a criminal offense in the absence of specific legislative authority, and by further finding that an indictment for attempted "theft by will" can dispense with many essential pleading requirements, has decided an important question of state law which has not been, but should be, addressed by this Court. TEX. R. APP. P. 66.3(b). Additionally, because the Court of Appeals ignored critical issues raised by Appellant, as well as extensive defense evidence, this Court should exercise its supervisory powers. TEX. R. APP. P. 66.3(f). The exercise of this Court's supervisory powers is further

20

essential because, as an opinion slated for publication, the Court of Appeals' opinion fails to serve as a guide to bench and bar in any future prosecutions.[16] *Id.*

## **PRAYER FOR RELIEF**

For the reasons herein alleged, Appellant prays that this Court will grant his Petition for Discretionary Review and, upon review, reverse the decision of the Court of Appeals.

Respectfully submitted,

/s/ *Katherine A. Drew*

Lynn Richardson
Chief Public Defender
Dallas County, Texas

Katherine A. Drew
Assistant Public Defender
State Bar No. 06117800
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399
(214) 875-2360 *(phone)*
(214) 875-2363 *(fax)*
Kathi.Drew@dallascounty.org

---

[16] Justin Burgess is currently charged with attempted theft, as is Edwin Olsen, the attorney who drafted the "Baylor" will and prepared the application for probate. Neither co-defendant has yet gone to trial.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Petition For Discretionary Review was served on Patricia Poppoff Noble, Attorney for the State, Dallas County District Attorney's Office, 133 N. Riverfront Blvd., LB-19, 10th Floor, Dallas, Texas, 75207, by electronic transmission on the 2 day of October, 2015.

I further certify that a true copy of the foregoing Petition For Discretionary Review was served on Lisa McMinn, the State's Prosecuting Attorney, P. O. Box 13046, Austin, Texas 78711-3046, by electronic transmission on the 2 day of October, 2015.

*/s/ Katherine A. Drew*
Katherine A. Drew

## CERTIFICATE OF COMPLIANCE

I hereby certify that, in accordance with the terms of TEX. R. APP. P. 9.4(i)(1), the word count in this document, which is prepared in Microsoft Word 2010, is 4,421, exclusive of the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

*/s/ Katherine A. Drew*
Katherine A. Drew

# APPENDIX

*McCay v. State*, No. 05-12-01199-CR (Tex. App. – Dallas September 9, 2015) (not yet published).



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01199-CR

**MARK MCCAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F11-00694-K**

## OPINION NUNC PRO TUNC

Before Justices Francis, Brown, and Stoddart
Opinion by Justice Francis

A jury found appellant Mark McCay guilty of attempted theft of property valued at more than $200,000. The trial court assessed appellant's punishment at ten years in prison, probated for four years, and a $1000 fine. In four issues, appellant contends: the indictment (1) failed to allege an offense and (2) failed to provide constitutionally sufficient notice of an offense; and (3) the evidence is legally insufficient to support his conviction; and (4) the trial court abused its discretion by admitting evidence of an extraneous offense. We affirm the trial court's judgment.

### Background

In January 2005, Mary Ellen Bendtsen was eighty-eight years old and lived alone in a house on Dallas's historic Swiss Avenue, where she had resided almost her entire life. Bendtsen was widowed twenty years earlier. Her only child, a daughter, lived in the Dallas area, as did

Bendtsen's sister and nephew. This case centers on Bendtsen's relationship with appellant and his business partner, Justin Burgess. The two young men were antique dealers, and over a period of ten or so years, they became frequent companions of Bendtsen. Certain details of this relationship are discussed more fully below when we analyze the sufficiency of the evidence, but the framework of events in early 2005 are necessary to our discussion at the outset.

On January 12, 2005, Bendtsen fell and hit her head while retrieving her mail. She was taken to Baylor Hospital in Dallas. Two days later, she signed a power of attorney allowing her daughter, Frances Giron, to make medical decisions for her. Bendtsen remained at Baylor for nine days and was treated for her head injury. Appellant and Burgess were frequent visitors. About a week after she was admitted, Bendtsen's doctor explained to her family that she would need to spend six weeks at a rehabilitation facility before she could return home. On January 18, 2005, while Giron and her nephew were visiting facilities for Bendtsen's rehabilitation, Bendtsen signed a second power of attorney. This document was drafted by attorney Edwin Olsen, a friend of appellant, and named appellant to act on Bendtsen's behalf. From that day forward, appellant prevented Bendtsen's family from visiting her in the hospital. On January 21, appellant had Bendtsen admitted to Ashley Court, a skilled nursing facility. Appellant instructed the staff at Ashley Court not to allow Giron to visit her mother.

In response to these developments, Giron initiated a legal proceeding seeking to become first the temporary, and then permanent, guardian of her mother. The court appointed an ad litem for Bendtsen and held a series of hearings in the initial temporary guardianship proceeding. After the first hearing on January 31, at which Bendtsen testified against the guardianship, appellant and Burgess brought her back to her Swiss Avenue home rather than returning her to Ashley Court. The men hosted a large party that evening at Bendtsen's home.

Two more hearings were held on the issue of temporary guardianship. After the third hearing, the probate court denied the temporary guardianship, although the permanent guardianship proceeding continued.

On February 22, Bendtsen was at home, visiting with Dixie Tidwell (a friend of Bendtsen and appellant) and Rose Cline (a companion hired by appellant to stay with Bendtsen), when she suffered a massive stroke. Tidwell called appellant. When he and Burgess arrived, they called an ambulance, and Bendtsen was again taken to Baylor. On that same day, appellant and Burgess stood at the foot of Bendtsen's hospital bed while Olsen read her the will he had drafted and helped her make a mark on the will to execute it. The event was video recorded by Tidwell; she and Cline served as witnesses. The will named Tidwell executrix and left Bendtsen's estate to appellant and Burgess with three exceptions: her jewelry to longtime friend, Bea Grayson, except one piece to be chosen by Cline, and a rocking chair to Giron. Bendtsen died in the hospital on March 2, 2005. On the morning of March 3, appellant and Burgess filed the Baylor will with the probate court. Later that day, Giron's attorney filed the will Bendtsen had executed in 2002 in Florida, where Giron was living at the time. The Florida will left Bendtsen's estate to Giron. Giron prevailed in the will contest because the Baylor will was not executed with proper statutory formalities: although appellant had Tidwell and Cline attend the will execution as witnesses, they did not sign in Bendtsen's presence, and appellant and Tidwell subsequently took the will from the hospital and had it notarized as if the notary had been present when the will was signed. The notary was Marian Gibson, another of appellant's friends.

In February 2006, the State filed its indictment charging appellant with attempted theft of Bendtsen's estate. Appellant went to trial and was found guilty of attempted theft of property valued at more than $200,000. The trial court assessed his punishment at ten years in prison and

then suspended the sentence, placing appellant on probation for four years, requiring appellant to serve thirty days in the Dallas County jail, and imposing a fine of $1,000. This appeal followed.

## Sufficiency of the Indictment

In his first two issues, appellant challenges the trial court's denial of his motion to quash the indictment. He argues the indictment was insufficient because it failed to allege an offense and failed to give him sufficient notice of the charges against him. Both the United States and Texas Constitutions assure an accused the right to notice of the charges against him. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The charging instrument must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). The sufficiency of an indictment presents a question of law; we review the trial court's ruling on sufficiency de novo. *Smith v. State*, 309 S.W.3d 10, 13–14 (Tex. Crim. App. 2010).

Appellant was charged with attempted theft of property valued at $200,000 or more. Both parties acknowledge appellant's indictment was amended a number of times. The indictment on which he went to trial, and which we must review for sufficiency, charged that appellant:

> with specific intent to commit the offense of theft of property of an aggregate value of $200,000 or more, did all of the following, which amounted to more than mere preparation that tended but failed to effect the commission of said intended theft, to wit: Defendant, with intent to deprive any other person having a greater right to possession of the property than Defendant upon the death of Mary Ellen Bendtsen, did cause Mary Ellen Bendtsen to execute a will, naming Defendant as a beneficiary to receive her property upon her death; and Defendant did thereafter file said will for probate.

Appellant challenges the form of this indictment on grounds that it failed to allege an illegal act, failed to identify the owner of the property appellant attempted to steal, and failed to describe the property that was the subject of the attempted theft.

–4–

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of that property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014). A person commits the criminal offense of attempt if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended. *Id.* § 15.01(a) (West 2011). An indictment alleging an attempt is sufficient if it alleges each element of the offense of criminal attempt. *Epps v. State*, 811 S.W.2d 237, 242 (Tex. App.—Dallas 1991, no pet.). An indictment for criminal attempt is not fundamentally defective for failure to allege the constituent elements of the offense attempted. *Young v. State*, 675 S.W.2d 770, 771 (Tex. Crim. App. 1984). Thus, appellant's indictment charging attempted theft was not required to allege all constituent elements of the offense of theft. *See Inman v. State*, 650 S.W.2d 417, 420 (Tex. Crim. App. 1983). Instead, the indictment needed only to allege that appellant, with the specific intent to commit a theft, committed acts amounting to more than preparation—here, causing Bendtsen to execute the Baylor will and filing it for probate—which tended, but failed, to effect the commission of the theft. *See id.*

Appellant argues that causing a person to execute a will and filing that will for probate are not illegal acts. If that conduct were standing alone, he would be correct. But the indictment charged that appellant acted "with specific intent to commit the offense of theft." At the hearing on appellant's motion to quash, the trial court ruled that the State had alleged an offense, stressing that proof of the offense would turn on proof of appellant's specific criminal intent. We agree. If performed with the requisite criminal intent to deprive whoever would otherwise have taken Bendtsen's property after her death, the conduct alleged in this indictment—causing Bendtsen to execute a will in his favor and then filing the will for probate—amounts to a criminal offense.

Appellant also argues the indictment is insufficient because the State did not plead either that Bendtsen lacked "testamentary capacity" or that appellant exercised "undue influence" over her. These terms, though, are rooted in the civil law and are meaningful in probate proceedings. In a criminal proceeding, the State can prove the accused attempted to appropriate property unlawfully in many ways. One of those ways is by proving the owner did not give effective consent. *See* TEX. PENAL CODE ANN. § 31.03(b)(1) (West Supp. 2014) ("Appropriation of property is unlawful if it is without the owner's effective consent."). And the code explains that consent is not effective if it is given by someone who by reason of mental defect is known by the actor to be unable to make reasonable property dispositions. *Id.* § 31.01(3)(C). Likewise, consent is not effective if given by someone who by reason of advanced age is known by the actor to have a diminished capacity to make informed and rational decisions about the reasonable disposition of property. *Id.* § 31.01(3)(E). But these are questions of proof, and the indictment did not need to set out the manner and means by which the State would prove the attempted unlawful appropriation. *See Geick v. State*, 349 S.W.3d 542, 546–47 (Tex. Crim. App. 2011).

Nor, as we have stated, did the indictment need to set out the specific elements of the theft that was attempted. *See Young*, 675 S.W.2d at 771. Despite appellant's complaints to the contrary, the indictment was not required to describe the property at issue with specificity or to name the owner of that property. Those are constituent elements of the offense of theft, not criminal attempt. Regardless, we conclude the indictment gave sufficient notice of the property at issue and the owner of that property for appellant to prepare his defense. *See Moff*, 154 S.W.3d at 601.

The property at issue was the property in Bendtsen's estate, that is, whatever she owned when she died. The State alleged that appellant intended to steal whatever property made up that estate (with the exception of jewelry and a rocking chair). But precisely what property would be

in the estate when Bendtsen died could not be known at the time appellant caused her to sign the will. Property could be lost or sold or stolen during the time between signing the will and Bendtsen's passing. By referring to "her property at her death," the indictment clearly identified the property in Bendtsen's estate, which was the property the Baylor will earmarked for appellant. *See Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 150 (Tex. 1980) ("A will speaks at the time of the testator's death, and it is the estate he then possessed that passes according to the terms of that will."). Appellant argues that at the time of trial, years after Bendtsen died, the State could have identified the property that was in fact in her estate. However, that identification would not have spoken to appellant's intent at the time he caused Bendtsen to execute the will and offered it for probate. The indictment sufficiently identified the property that appellant attempted to steal.

The issue of timing is also relevant to naming the owner of the property in this case. At the time appellant caused Bendtsen to execute the Baylor will, she was the owner of the property at issue. To the extent effective consent was necessary to pass the property to appellant, it was Bendtsen's consent that was relevant. However, because the property would not pass until Bendtsen's death, the owner(s)—who would be deprived of possession of the property by appellant—were those who would take Bendtsen's estate in the absence of the Baylor will. Again, the identity of that person or persons could have changed between execution of the will and Bendtsen's death based on a number of circumstances: Giron might have predeceased Bendtsen, the Florida will might have been declared invalid, Giron's two children could have succeeded to the property. The penal code defines "owner" as a person who has title to or possession of the property or who has "a greater right to possession of the property than the actor." TEX. PENAL CODE ANN. § 1.07(a)(35)(A) (West Supp. 2014). When appellant formed the specific intent to steal Bendtsen's estate, he could not have known who would take that estate

–7–

but for his conduct. Thus, the State properly adopted this statutory definition of owner and stated appellant's attempt was to deprive "any other person having a greater right to possession of the property than Defendant upon the death of Mary Ellen Bendtsen." Again, the indictment sufficiently identified the persons whose ownership was at issue in this prosecution.

Before we leave the subject of the indictment, we address appellant's argument that the State's prosecution in this case is an inappropriate use of the theft statute and an attempt to criminalize a will contest. The theft statute has a broad reach: "A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a). Indeed, chapter 31 of the penal code, which addresses theft, explains this statute was intended to create a "single offense" that would supersede a dozen separate offenses that predated the form of the code effective in 1974. *See id.* § 31.02 (West 2011) (section 31.03 supersedes theft, theft by false pretext, conversion by a bailee, theft from the person, shoplifting, acquisition of property by threat, swindling, swindling by worthless check, embezzlement, extortion, receiving or concealing embezzled property, and receiving or concealing stolen property). The statute clearly applies to a theft when the appropriation is accomplished using a legal document. *See, e.g.*, *Lehr v. State*, No. 05-09-00381-CR, 2011 WL 1566970, at *8 (Tex. App.—Dallas Apr. 27, 2011, pet. ref'd) (not designated for publication) (theft by deed); *see also Cooper v. State*, 707 S.W.2d 686, 691–92 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (theft by promissory note). We see no reason why such an unlawful transfer cannot be made by will. The fact that the two acts necessary for a theft by will—causing the will to be made and filing the will for probate—are separated by time does not negate the fact that such a prosecution serves the identical policies as a theft by deed.

Appellant expands on his contention that the State is attempting to criminalize will contests by arguing that the probate court is the proper arena for this type of contest. A will

contest determines the validity of a will.  *See* TEX. EST. CODE ANN. § 256.04(a) (West 2014).  A prosecution for theft determines whether a person has the specific criminal intent to deprive the owner of her property.  TEX. PENAL CODE ANN. § 31.03(a).  The only will contests that can be "criminalized" are those in which a will proponent knowingly submits a will for probate with the specific intention of stealing an estate from others with the legal right to inherit.  *See id.*  A good faith contest between two wills does not amount to a theft and would not be prosecuted as one.  But the legislature has expressed its intent in clear terms:  when an actor appropriates property knowing its owner cannot give effective consent to the transfer, the appropriation—or attempted appropriation—is a criminal offense, not a probate matter.  *See id.* § 31.03(b)(1).

We conclude the indictment not only stated a criminal offense, it sufficiently identified both the property at issue and the owners of that property so as to give appellant the notice he needed to prepare his defense.  *See Moff*, 154 S.W.3d at 601.  We overrule appellant's first two issues.

### Sufficiency of the Evidence

In his third issue, appellant challenges the sufficiency of the evidence at trial to support his conviction for attempted theft.  Appellant argues that the Baylor will represented Bendtsen's true intent and that she possessed testamentary capacity when she executed that will.  At the same time, appellant contends he had no criminal intent in his conduct surrounding the Baylor will and there was no evidence of deception, coercion, force, or threat in his dealings with Bendtsen.  Specifically, then, appellant challenges two elements of the State's proof.  He contends the evidence was insufficient to establish he intended to steal Bendtsen's estate.  He also contends the evidence was insufficient to establish he attempted to appropriate Bendtsen's property unlawfully, because she consented to his taking the estate when she died.

We review a sufficiency challenge by examining the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential

–9–

elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Our duty is to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

*Appellant's Criminal Intent*

To prove an attempted theft, the State must show the accused possessed an intent to steal; this intent may be inferred from circumstantial evidence. *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996). In appellant's case, we consider his conduct throughout his relationship with Bendtsen, especially during her 2005 hospitalizations, and we look to evidence of appellant's conduct with other persons that was offered and admitted for the purpose of determining his intent in this case.

The evidence at trial established appellant was determined to possess Bendtsen's Swiss Avenue home. Bendtsen owned five-twelfths of the Swiss Avenue property; the remainder was owned by her siblings or their heirs. Several witnesses gave specific evidence of appellant's efforts to obtain the house from Bendtsen. We view their testimony in the light most favorable to the prosecution. *See Jackson*, 443 U.S. at 319.

Jeffrey Martin, a landscape and interior designer and friend of Bendtsen, testified that in 2003 appellant called him twice and told him he was trying to get Bendtsen to sign a power of attorney and to leave her share of the house to him and Burgess in exchange for everything they had done for her. But Bendtsen was not cooperating. Appellant told Martin he had invested a lot of time and energy into Bendtsen, and he had kept receipts of all the food and alcohol he had brought to her and money spent taking her out. Appellant repeated "over and over" that he

–10–

wanted that house and was entitled to it. Indeed, he told Martin he had a plan to get full ownership of the house when he inherited Bendtsen's share: he would refuse to join the other owners in selling the house, driving the price down until he could afford to buy their shares. He also told Martin that if Bendtsen would not sign the papers, he and Burgess would stop seeing her—it would be the end of their relationship.

Jackie Staley testified similarly at trial. Staley was a retired home restorer as well as a long-time friend of Bendtsen. She said appellant called her and told her he was trying to get Bendtsen to sign legal papers that would give Bendtsen a life estate in the house and would allow appellant and Burgess to move in to take care of her. Appellant told Staley he had taken Bendtsen to an attorney, but she refused to sign the paperwork. Appellant was "quite upset." Appellant told her that his friend Gibson was hosting a party where Bendtsen's best friends would talk to her and encourage her to sign the paperwork. (Staley chose not to attend such a party, and when she spoke to Bendtsen afterwards, Bendtsen was "very angry.") Appellant told Staley that he and Burgess were going to "back off" their time with Bendtsen so she would understand how much they had helped her. Appellant also shared with Staley a plan to get the entire house: he told her he would present the other owners with bills for taxes and insurance Bendtsen had paid while she lived there. The record indicates Bendtsen's siblings had agreed that she could remain in the house after their parents' death if she paid the taxes and insurance on the house.

Understanding that appellant's self-expressed goal was to obtain the Swiss Avenue property, and that he had been unsuccessful in obtaining Bendtsen's cooperation in making such a transfer, the months leading up to Bendtsen's death are revealing. Again, we look at the evidence in the light most favorable to the prosecution. *See Jackson*, 443 U.S. at 319.

Ayodeji Fatunde was an investigator for Adult Protective Services (APS). After Bendtsen's fall, appellant encouraged a Baylor social worker to make a referral to APS alleging exploitation of Bendtsen by her daughter. Fatunde interviewed Bendtsen, Giron, appellant, and numerous people on staff of both Baylor and Ashley Court. His conclusion was that Giron was not exploiting Bendtsen, but that appellant wanted to isolate Bendtsen and discredit Giron so that he could exploit Bendtsen.

Maryann Jones, a concierge at Baylor, was asked to go to Bendtsen's room during the first hospitalization to notarize a document. Jones testified the document was a legal document; she thought it was a power of attorney. She testified that there were three men in the room (evidence indicates it was appellant, Burgess, and attorney Olsen) who were trying to tell Bendtsen how to answer Jones's questions. Jones did not "feel comfortable" about proceeding with the notarization. Similarly, Cynthia Kennedy was Bendtsen's physical therapy assistant during her first hospitalization. Kennedy described appellant as "meddling" in her mental status assessment of Bendtsen, trying to steer Kennedy to topics that might make Bendtsen seem "more cognitive" than she was.

On January 18, 2005, appellant had Bendtsen execute the power of attorney in his favor. (The document had originally been dated November 2003, when appellant initially tried to persuade Bendtsen to sign a power of attorney, but she had refused.) Then on January 22, appellant had Bendtsen execute a document (1) revoking any other powers of attorney, declarations of guardianship, or other authorizations empowering others to act on her behalf, and (2) naming appellant as her agent/attorney in fact to exercise both a durable power of attorney and a medical power of attorney, and naming Olsen as her attorney in law. The January 22 document was notarized by Gibson, the same person who hosted the party at which friends of

Bendtsen were to encourage her to sign over her property to appellant and who falsely notarized the Baylor will.

The doctors who treated Bendtsen at Baylor after the stroke testified to appellant's conduct that effectively isolated Bendtsen from her family. David Cobasko, Bendtsen's neurologist, discussed her worsening condition with appellant. Appellant told Cobasko he was not to discuss the case with Bendtsen's sister or daughter; he was to discuss her status only with appellant. Susan Ellen Kohl, Bendtsen's attending physician at Baylor after the stroke, testified appellant and Burgess were with Bendtsen in the emergency room. They told Kohl that Bendtsen was estranged from her daughter and would not want her daughter notified of her condition. They had Bendtsen identified as "Patient X" to keep family members from learning that she was in the hospital.

The circumstances surrounding the Baylor will further manifest appellant's intent. His efforts to have Bendtsen voluntarily sign over her home had failed. He was informed that Bendtsen's status was grave after the stroke. He had isolated her from her family. And so he had Olsen draft the will leaving the estate to him and Burgess and bring it to Baylor. Bendtsen's physical and mental status, and her ability to consent to the provisions of that will, are discussed in more detail below. Under the facts of this case, appellant's orchestration of this deathbed transfer is itself evidence that he intended to take the property regardless of Bendtsen's wishes by creating a transfer of the property by will. When he submitted the Baylor will for probate after Bendtsen died, appellant finalized his attempt to gain possession of her estate.

Finally, witnesses testified to a relationship appellant developed with an elderly couple, Jack and Irene Farrington. Appellant got to know the Farringtons after Jack's brother died. At some point, he assumed responsibility for caring for the sickly couple, and he sometimes lived in their house. At one point, he hired Margaret Armstrong as a caretaker. She testified that when

–13–

she arrived, the house was filthy, the couple had not been bathed in years, and they were wearing threadbare clothing held together with safety pins. Appellant told Armstrong the Farringtons had no living relatives. During the months she worked there, appellant brought an attorney to the house to get Jack to sign legal papers, but he refused. The men argued a number of times, and Armstrong advised Jack not to sign the papers. Ultimately, appellant took Jack to attorney Paul Lokey, and Jack signed documents creating a trust. Lokey testified Jack placed his half of the home and two bank accounts in the trust, which would be used to care for the couple during their life and then would be split between appellant and an old friend of Jack's.

Appellant's relationship with the Farringtons was challenged only when Irene's sister and niece visited and found the couple in frail condition. Appellant initially persuaded the visitors he was taking care of them. But when the niece, Leona Owen, returned after a few months, she discovered Jack had died; appellant had not notified Jack's family. Owen took care of her aunt for a year in the Farringtons' house and then moved Irene to Waco. She testified that when she was about to leave the house with Irene, appellant drove up "screaming and hollering, wanting – I couldn't move her, I couldn't move the furniture, the house was his." Owen gave appellant the Farringtons' furniture other than Irene's hospital bed. Lokey testified appellant wanted the couple's house and was not happy when it was sold. When Irene died two years later, appellant received about $100,000 from the trust.

The jury was instructed they could consider this evidence only if they found and believed beyond a reasonable doubt that appellant had in fact committed these acts. Moreover, they were instructed that the evidence could only be considered in determining appellant's intent, knowledge, or plan in connection with the case before them. We conclude the jury could have found the evidence true beyond a reasonable doubt and could have concluded it was further evidence of appellant's intent in the Bendtsen case. Jurors could have believed that in both cases

appellant insinuated himself into elderly persons' lives and pressured those individuals to sign over property to him.

We conclude there was ample evidence that appellant intended to take Bendtsen's estate and thus to deprive anyone who would otherwise inherit that estate from their rightful inheritance. Rational jurors could have concluded beyond a reasonable doubt that appellant possessed the criminal intent necessary to commit an attempted theft. *See Jackson*, 443 U.S. at 319.

*Bendtsen's Ineffective Consent*

Appellant also challenges the sufficiency of the evidence establishing he attempted to appropriate Bendtsen's property unlawfully. He argues she voluntarily transferred the property to him in the Baylor will. Unlawful appropriation can be proved in a number of ways, but one is by establishing the owner of the property did not effectively consent to giving the property. *See* TEX. PENAL CODE ANN. § 31.03(b)(1). And, as we have discussed, consent is not effective if it is given by someone who by reason of mental defect is known by the actor to be unable to make reasonable property dispositions, *id.* § 31.01(3)(C), or if given by someone who by reason of advanced age is known by the actor to have a diminished capacity to make informed and rational decisions about the reasonable disposition of property, *id.* § 31.01(3)(E). Accordingly, the evidence of unlawful appropriation is sufficient if a reasonable juror could have concluded that appellant knew Bendtsen was unable to make reasonable dispositions of her property, either because her mind was not well or because of a diminished capacity that came about because of her advanced age. We focus on Bendtsen's mental status during the time leading up to and immediately after her stroke, including the day Bendtsen made a mark on the will.

Those who claimed to be Bendtsen's friends were divided in their opinions as to her mental capacity in the time period leading up to her stroke. Some testified she possessed all of

–15–

the mental ability she always had; others testified to a slow decline she experienced over time; still others testified they were concerned at the significant decline she experienced in the early months of 2005. As the exclusive judge of the credibility of the witnesses and the weight to be given their testimony, the jury had to resolve this conflicting testimony. *Wise*, 364 S.W.3d at 903. That said, even counsel for appellant acknowledged in his opening statement to the jury that Bendtsen's mental ability had been affected by the stroke and that "she had some problems" as a result.

The medical testimony on this subject, however, was not conflicting. Even before her stroke, Kennedy testified, Bendtsen was not alert and oriented. Psychiatrist Edward Tuthill, who performed a psychological assessment of Bendtsen, concluded she suffered from advanced dementia and was "not competent to make informed choices or give informed consent, or even formulate clear choices." Tuthill found she would be "vulnerable to 'undue influence' and would not be able to protect her own interests from someone." He concluded further that this condition was not caused by her fall, but it would have developed over time. Bendtsen's attending physician at Ashley Court, Vladimir Grebennikov, agreed that she was confused and disoriented, with decreased short-term memory.

After her stroke, Bendtsen's doctors described her as obtunded, meaning she was comatose or close to it. According to Tuthill, she could have conceived of the idea of a will, but she could not have pursued it. Significantly, the State asked each testifying health care professional whether he or she would have been comfortable serving as a witness to a legal transaction by Bendtsen; each witness replied negatively and testified Bendtsen lacked the ability to participate in such a transaction. Her doctors reported her condition to appellant, who had Bendtsen's medical power of attorney. After Bendtsen suffered her stroke, appellant stood at the

–16–

foot of her hospital bed while Olsen read her the will he had drafted and helped her make a mark on the will.

From this evidence, we conclude a rational jury could have found that—although Bendtsen "signed" the Baylor will—she did not effectively consent to transferring her estate to appellant and Burgess. A rational jury could also have concluded appellant knew that Bendtsen was unable to give effective consent after her stroke. Accordingly, we conclude the evidence appellant unlawfully appropriated the estate was sufficient. *See Jackson*, 443 U.S. at 319.

We overrule appellant's third issue.

### Admissibility of Extraneous Offense

In his fourth issue, appellant argues the trial court erroneously admitted the evidence of appellant's relationship with Jack and Irene Farrington during the guilt/innocence phase of his trial. As we discussed above, the evidence included allegations of mistreatment of the couple by appellant and of his attempts to obtain possession of their home and property.

Appellant objected that the evidence involved conduct that was not relevant to the Bendtsen case and was improper character evidence. His attorney argued that if the evidence were admitted the jury could "convict him for a collateral crime," with which he had never been charged. Appellant also objected that the Farrington evidence was too remote from the facts of the Bendtsen case to be admissible under the theft statute's provision governing "recent transactions other than, but similar to, that [upon] which the prosecution is based." TEX. PENAL CODE ANN. § 31.03(c)(1). We review a trial court's decision to admit evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

We first address the issue of remoteness. The theft statute allows the State to prove an accused's knowledge or intent through evidence he participated in "recent transactions other than, but similar to" the transaction being prosecuted. TEX. PENAL CODE ANN. § 31.03(c)(1). Appellant's first objection to the Farrington evidence was that it did not involve a recent

–17–

transaction, as the statute required. However, when dates within these two transactions are lined up, the overlap is clear. Trial testimony consistently placed appellant in Bendtsen's social circle for ten to fifteen years. At the latest, then, he had befriended Bendtsen and was seeing her regularly by 1995. In 1997, he hired Armstrong to care for the Farringtons, and he took Jack to Lokey to draw up the trust in his favor. The Farringtons' family visited in 1999, the year Jack died. Irene's niece stayed in the house caring for her for the following year and then moved her to Waco in 2000. Appellant finally received his share of the trust when Irene died in 2003. That was the same year Bendtsen visited her daughter in Florida and executed the Florida will, and it was the same year appellant began calling Martin and Staley, confiding to them that he wanted— and deserved—Bendtsen's house. We conclude that appellant's involvement with the Farringtons necessarily overlapped in time with his involvement with Bendtsen. The evidence offered by the State was not remote from the Bendtsen evidence presented to the jury. We conclude the evidence was admissible under section 31.03(c).

Appellant also argues the Farrington evidence was not admissible under rule 403, given its bar to evidence that is more unfairly prejudicial than probative. *See* TEX. R. EVID. 403. The State argues initially that appellant did not preserve a rule 403 objection below. Our review of the record confirms that the issue of unfair prejudice was argued by the parties and that the trial court specifically conducted a rule 403 balancing test before admitting the evidence. Because the trial court considered and ruled on this issue, we may as well.

The court of criminal appeals has identified factors a trial court must balance when performing a rule 403 analysis. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). On the one hand, the court evaluates the probative force of the proffered evidence and the proponent's need for that evidence. *Id.* at 641. And on the other hand—when the

–18–

complaint is that the evidence is more unfairly prejudicial than probative—the court must evaluate the tendency of the evidence to suggest a decision on an improper basis. *Id.*

"[W]here intent or guilty knowledge is an essential element of the offense which the State must prove to obtain a conviction, its materiality goes without saying." *Morgan v. State*, 692 S.W.2d 877, 880 (Tex. Crim. App. 1985). In this case, evidence that appellant insinuated himself into the lives of these elderly persons and attempted to pressure Jack into signing over the couple's home and accounts is highly probative of his criminal intent in Bendtsen's case. Appellant contends Bendtsen wanted to make first a power of attorney, and then a will, in his favor, and that in doing so she transferred the bulk of her estate to him voluntarily. The Farrington evidence, if the jury believed it, showed appellant's intent to isolate frail individuals from their families and pressure them into legally transferring property, especially the interest in their homes.

On the other hand, we do not see that evidence of appellant's relationship with the Farringtons would tend to cause the jury to decide the Bendtsen case on an improper basis. The evidence tended to show appellant knew he could isolate elderly individuals from their families and obtain legal transfers of those individuals' power and money to himself. The evidence was necessary to rebut appellant's arguments that his conduct involving Bendtsen was based solely on affection and a desire for her well-being. Finally, appellant was protected from misuse of the evidence because the trial court instructed the jury concerning use of this, or any, extraneous offense evidence. Jurors were told the evidence could be used only if they were persuaded beyond a reasonable doubt that appellant actually committed the wrongful act, and even then, they could consider the evidence only in determining appellant's intent, knowledge, or plan in connection with the Bendtsen case. We presume the jury follows the trial court's instructions in

–19–

the manner presented. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). We discern no violation of rule 403 in admission of the Farrington evidence.

We conclude the trial court did not abuse its discretion in admitting the Farrington evidence. We overrule appellant's fourth issue.

## Conclusion

We have decided each of appellant's issues against him. Accordingly, we affirm the trial court's judgment.

Publish
TEX. R. APP. P. 47
121199F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE

–20–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARK MCCAY, Appellant

No. 05-12-01199-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas
Trial Court Cause No. F11-00694-K.
Opinion delivered by Justice Francis.
Justices Brown and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered September 9, 2015.

–21–